**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PLANNED PARENTHOOD ARIZONA
INCORPORATED; UNKNOWN PARTIES,
named as Jane Doe #1, Jane Doe #2,
and Jane Doe #3; ERIC REUSS, M.D.,
  *Plaintiffs-Appellees*,

v.

TOM BETLACH, Director, Arizona
Health Care Cost Containment
System; TOM HORNE, Attorney
General,
  *Defendants-Appellants*.

No. 12-17558

D.C. No.
2:12-cv-01533-
NVW

PLANNED PARENTHOOD ARIZONA
INCORPORATED; UNKNOWN PARTIES,
named as Jane Doe #1, Jane Doe #2,
and Jane Doe #3; ERIC REUSS, M.D.,
  *Plaintiffs-Appellees*,

v.

TOM BETLACH, Director, Arizona
Health Care Cost Containment
System; TOM HORNE, Attorney
General,
  *Defendants-Appellants*.

No. 13-15506

D.C. No.
2:12-cv-01533-
NVW

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
June 12, 2013—San Francisco, California

Filed August 22, 2013

Before: Marsha S. Berzon and Jay S. Bybee, Circuit
Judges, and Consuelo B. Marshall, Senior District Judge.[*]

Opinion by Judge Berzon

---

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's summary judgment and permanent injunction, and also dismissed an appeal of the district court's preliminary injunction, in this action challenging an Arizona statute that bars patients eligible for the state's Medicaid program from obtaining covered family planning services through health care providers who perform

---

[*] The Honorable Consuelo B. Marshall, Senior District Judge for the U.S. District Court for the Central District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

abortions in cases other than medical necessity, rape, or incest. *See* Ariz. Rev. Stat. § 35-196.05(B).

The panel held that the Medicaid Act's free-choice-of-provider requirement, 42 U.S.C. § 1396a(a)(23), confers a private right of action under 42 U.S.C. § 1983. The panel then held that the Arizona statute contravenes the Medicaid Act's requirement that states give Medicaid recipients a free choice of qualified provider. The panel held that the Arizona law violates this requirement by precluding Medicaid patients from using medical providers concededly qualified to perform family planning services to patients in Arizona generally, solely on the basis that those providers separately perform privately funded, legal abortions.

The panel dismissed Arizona's appeal from the district court's preliminary injunction on the grounds that the district court's entry of final judgment and a permanent injunction mooted the appeal.

---

### COUNSEL

Logan Johnston, Johnston Law Offices, PLC, Phoenix, Arizona, for Defendant-Appellant Tom Betlach.

Steven H. Aden (argued) and Catherine Glenn Foster, Alliance Defending Freedom, Washington, D.C.; Robert Lawrence Ellman, Arizona Attorney General's Office, Phoenix, Arizona, for Defendant-Appellant Tom Horne.

Andrew D. Beck and Susan Talcott Camp, American Civil Liberties Union Foundation, New York, New York; Alice J. Clapman (argued), Planned Parenthood Federation of America, Washington, D.C.; Roger Evans, Planned Parenthood Federation of America, New York, New York; Kelly Joyce Flood and Daniel J. Pochoda, ACLU Foundation of Arizona, Phoenix, Arizona; Daniel B. Pasternak and Laurence J. Rosenfeld, Squire Sanders LLP, Phoenix, Arizona, for Plaintiffs-Appellees.

Denise Mary Burke, Americans United for Life, Washington, D.C., for Amicus Curiae 29 Arizona Senators, Representatives, and Representatives-Elect.

Lawrence John Joseph, Law Office of Lawrence J. Joseph, Washington, D.C., for Amicus Curiae Eagle Forum Education & Legal Defense Fund.

Alisa Beth Klein and Mark B. Stern, Appellate Staff, United States Department of Justice, Civil Division, Washington, D.C., for Amicus Curiae United States of America.

**OPINION**

BERZON, Circuit Judge:

An Arizona statute bars patients eligible for the state's Medicaid program from obtaining covered family planning services through health care providers who perform abortions in cases other than medical necessity, rape, or incest. *See* Ariz. Rev. Stat. § 35-196.05(B). Such abortions are already ineligible for Medicaid coverage and so must be paid for with private funds. The Arizona law extends the ineligibility to

non-abortion services such as gynecological exams and cancer screenings unless the patient's provider agrees to stop performing privately funded elective abortions.

Before the Arizona law could go into effect, Planned Parenthood of Arizona and several individual plaintiffs filed this lawsuit challenging the Arizona law as a violation of the federal Medicaid Act. That Act provides that state Medicaid programs must allow Medicaid recipients to obtain care from "any [provider] qualified to perform the service or services required," and that enrollment in a Medicaid managed-care plan "shall not restrict the choice of the qualified [provider] from whom the individual may receive" "family planning services." 42 U.S.C. §§ 1396a(a)(23) & 1396d(a)(4)(C). This provision is known as the Act's free-choice-of-provider requirement. *See Planned Parenthood of Ind. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 968 (7th Cir. 2012).

Finding that plaintiffs were likely to succeed on the merits of their Medicaid Act claim and would be irreparably harmed were the statute to become effective, the district court first entered a preliminary injunction barring implementation of the Arizona law while this lawsuit was pending. Arizona appealed that injunction to this court. Meanwhile, proceedings continued in the district court, with that court ultimately holding that the Arizona law runs afoul of the Medicaid Act's free-choice-of-provider requirement and granting summary judgment to the plaintiffs. To enforce that judgment, the district court permanently enjoined Arizona from enforcing the law against Medicaid providers. Arizona again appealed.

The district court's entry of final judgment and a permanent injunction moots Arizona's appeal of the preliminary injunction. *See Planned Parenthood of Cent. & N. Ariz. v. Arizona*, 718 F.2d 938, 949–50 (9th Cir. 1983); *SEC v. Mount Vernon Mem'l Park*, 664 F.2d 1358, 1361–62 (9th Cir. 1982). We therefore dismiss that appeal (Case No. 12-17558), and consider here only Arizona's appeal of the summary judgment order and permanent injunction (Case No. 13-15506).

For the reasons here summarized and further explained below, we affirm. First, joining the only two other circuits that have decided the issue, we hold that the Medicaid Act's free-choice-of-provider requirement confers a private right of action under 42 U.S.C. § 1983. *See Planned Parenthood of Ind.*, 699 F.3d at 968; *Harris v. Olszewski*, 442 F.3d 456, 459 (6th Cir. 2006).

Second, echoing the Seventh Circuit's recent determination with regard to a nearly identical Indiana law, we hold that the Arizona statute contravenes the Medicaid Act's requirement that states give Medicaid recipients a free choice of qualified provider. *See* 42 U.S.C. § 1396a(a)(23); *Planned Parenthood of Ind.*, 699 F.3d at 968. The Arizona law violates this requirement by precluding Medicaid patients from using medical providers concededly qualified to perform family planning services to patients in Arizona generally, solely on the basis that those providers separately perform privately funded, legal abortions.

## BACKGROUND

### A. Medicaid and the Free-Choice-of-Provider Requirement

Medicaid is a cooperative federal-state program to help people of limited financial means obtain health care. Under the program, the federal government provides funds to the states, which the states then use (along with state funds) to provide the care. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2581 (2012). Each state designs, implements, and manages its own Medicaid program, with discretion as to "the proper mix of amount, scope, and duration limitations on coverage." *Alexander v. Choate*, 469 U.S. 287, 303 (1985). But that discretion has limits: To receive Medicaid funding, states must comply with federal criteria governing, among other matters, who is eligible for care, what services must be provided, how reimbursement is to be determined, and what range of choice Medicaid recipients must be afforded in selecting their doctors. *See* 42 U.S.C. § 1396 *et seq.*; *cf. Sebelius*, 132 S. Ct. at 2581. If a state Medicaid plan fails to conform to the statutory criteria, the Secretary of Health and Human Services ("HHS") may withhold Medicaid funds from the state, either in whole or part. *See* 42 U.S.C. § 1396c; *cf. Sebelius*, 132 S. Ct. at 2607–08 (holding portions of 42 U.S.C. § 1396c unconstitutional but noting that "[n]othing in our opinion precludes Congress from . . . requiring that States accepting such [federal Medicaid] funds comply with the conditions on their use").

At issue here is the provision of the Medicaid Act known as the free-choice-of-provider requirement. *See Planned Parenthood of Ind.*, 699 F.3d at 968. That provision imposes

two criteria upon state Medicaid plans: First, with some exceptions, state plans must generally allow Medicaid recipients to obtain care from any provider who is "qualified to perform the service or services required" and "who undertakes to provide . . . such services." 42 U.S.C. § 1396a(a)(23)(A). Second, the provision adds an additional, more specific layer of protection for patients seeking family planning services, requiring that "enrollment of an individual eligible for [Medicaid] in a primary care case-management system . . . , a medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive services under section 1396d(a)(4)(C) of this title," i.e., "family planning services." *Id.* §§ 1396a(a)(23)(B) & 1396d(a)(4)(C). Section 1396a(a)(23)(B) thus carves out and insulates family planning services from limits that may otherwise apply under approved state Medicaid plans, assuring covered patients an unfettered choice of provider for family planning services.

## B.  Arizona's House Bill 2800

In spring 2012, the Arizona legislature enacted House Bill 2800 ("HB 2800"), which provides:

> [Arizona] or any political subdivision of [Arizona] may not enter into a contract with or make a grant to any person that performs nonfederally qualified abortions or maintains or operates a facility where nonfederally qualified abortions are performed for the provision of family planning services.

2012 Ariz. Leg. Serv. Ch. 288 (H.B. 2800) (West) (codified at Ariz. Rev. Stat. § 35-196.05(B)). HB 2800 defines a

"nonfederally qualified abortion" as "an abortion that does not meet the requirements for federal reimbursement under title XIX of the social security act," i.e., the requirements of the Hyde Amendment, as applied to the Medicaid Act. *Id.* § 35-196.05(F)(4). *See generally Harris v. McRae*, 448 U.S. 297, 302–03 (1980) (explaining the background of the Hyde Amendment). Under the Hyde Amendment — actually, a rider that Congress attaches to each year's appropriations legislation — federal funds (including Medicaid funds) may not be used to pay for abortions except in cases of danger to the life of the mother, rape, or incest. *See* Consolidated Appropriations Act, 2012, Pub. L. No. 112-74, §§ 613–14, 125 Stat. 786, 925–96 (2011).[1]

## C. Planned Parenthood's Challenge to HB 2800

Planned Parenthood of Arizona is a nonprofit network of 13 clinics that offer a range of family planning and reproductive health services, including annual gynecological exams, pap smears, testing and treatment for sexually transmitted diseases, and contraceptive counseling. For those services, Planned Parenthood has a longstanding provider agreement with Arizona's Medicaid program, known as the Arizona Health Care Cost Containment System or "AHCCCS" (pronounced "Access"). Together, Planned Parenthood of Arizona clinics treat about 3,000 Medicaid

---

[1] Arizona restricts the use of public funds for abortions except where an abortion is necessary to save the life or health of the mother. *See* Ariz. Rev. Stat. § 35-196.02.

patients each year, for which the clinics receive about $350,000 in payments.**[2]**

In addition to the family planning and reproductive health services described above, five of the 13 Planned Parenthood clinics in Arizona also perform abortions. Except under the narrow circumstances permitted by Arizona and federal law, Planned Parenthood does not receive any public funds or reimbursement for the abortions it performs.

In summer 2012, Planned Parenthood received a letter, sent by AHCCCS to all Arizona Medicaid providers, concerning the implementation of HB 2800. The letter asked Planned Parenthood to return a signed form attesting that, as of August 2, 2012, it "[would] not perform any abortions . . . or maintain or operate a facility where any abortion is performed" except in cases of rape, incest, or medical necessity. If Planned Parenthood did not return the signed attestation by the deadline, the letter explained, AHCCCS would "terminate [its] provider participation agreement" and would no longer "reimburse [Planned Parenthood] for ANY medical services."

Rather than sign and return the form, Planned Parenthood and several individual plaintiffs filed suit to block HB 2800 from going into effect. The individual plaintiffs are three Arizona women who, through Medicaid, receive family planning services at the Planned Parenthood clinics in Yuma and Flagstaff, and Dr. Eric Reuss, an obstetrician-

---

**[2]** Planned Parenthood estimates that those reimbursements cover 55% of the costs it incurs in providing Medicaid services. Arizona disputes this estimate but does not provide an estimate of its own. This factual dispute is not material to any of the legal issues in this case.

gynecologist in private practice in Scottsdale, who, like Planned Parenthood, has a Medicaid provider agreement with AHCCCS.[3] The initial complaint alleged that HB 2800 violates the Medicaid Act free-choice-of-provider requirement as well as several constitutional provisions. Finding that Planned Parenthood was likely to succeed on its Medicaid Act claim, the district court granted a preliminary injunction barring Arizona from implementing HB 2800 while the lawsuit was pending. Arizona timely appealed the preliminary injunction to this court.

Meanwhile, Planned Parenthood moved for summary judgment solely on the Medicaid Act claim, which it stipulated would fully resolve the case. In February 2013, the district court granted summary judgment for Planned Parenthood, holding that HB 2800 violates the Medicaid Act's free-choice-of-provider requirement. Under that requirement, the district court explained, Arizona unambiguously "lacks [the] authority" to "limit the range of qualified Medicaid providers for reasons unrelated to a provider's ability to deliver Medicaid services." Based on its legal ruling, the district court permanently enjoined Arizona from enforcing HB 2800 against plaintiffs, from "disqualifying otherwise qualified providers from receiving Medicaid reimbursement for medical services covered by Medicaid on the basis that these providers provide otherwise legal abortions," and from "requiring providers to sign the attestation form issued by [AHCCCS] in furtherance of [HB 2800] . . . [or] enforcing any previously signed attestation

---

[3] We refer to the plaintiffs collectively as "Planned Parenthood." The named defendants are Tom Betlach, AHCCCS Director, and Tom Horne, Arizona Attorney General. We refer to the defendants collectively as "Arizona."

forms." Arizona timely appealed to this court. We consolidated the new appeal with Arizona's already pending preliminary injunction appeal.

## DISCUSSION

### A.  § 1396a(a)(23) Confers a § 1983 Right of Action

There is an issue to be addressed at the threshold; whether Planned Parenthood has pleaded a viable cause of action. Planned Parenthood asserts a right of action for enforcement of the Medicaid Act's free-choice-of-provider requirement under § 1983. Arizona objects, maintaining that the free-choice-of-provider provision does not satisfy the requisites for a § 1983 claim. Joining two of our sister circuits, we hold that § 1396a(a)(23) may be enforced through individual § 1983 lawsuits. *See Planned Parenthood of Ind.*, 699 F.3d at 968; *Harris*, 442 F.3d at 459.[4]

Section 1983 creates a federal remedy against anyone who, under color of state law, deprives "any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 thus authorizes lawsuits "to enforce individual *rights* under federal statutes," not "'the broader or vaguer "benefits" or "interests"'" a federal statute may implicate. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113,

---

[4] In addition, the Eleventh Circuit, in the course of deciding that the Medicaid free-choice-of-provider provision does not create a private right "enforceable by health care providers" on their own behalf, indicated that "Medicaid *recipients* . . . have enforceable rights under [that provision]." *Silver v. Baggiano*, 804 F.2d 1211, 1216–18 (11th Cir. 1986) (emphasis added), *abrogated on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002).

119–20 (2005) (emphasis added) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)).

To determine whether a federal statutory provision creates a private right enforceable under § 1983, we consider three factors: First, "Congress must have intended that the provision in question benefit the plaintiff"; second, the plaintiff must have "demonstrate[d] that the right assertedly protected . . . is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and third, "the provision giving rise to the asserted right" must be "couched in mandatory, rather than precatory, terms." *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997) (internal citation and quotation marks omitted). If all three prongs are satisfied, "the right is presumptively enforceable" through § 1983. *Gonzaga*, 536 U.S. at 284. The defendant may overcome the presumption by demonstrating that Congress foreclosed private enforcement expressly "or impliedly, by creating a comprehensive enforcement scheme that is incompatible with" individual private lawsuits. *Id.* at 284 n.4 (quoting *Blessing*, 520 U.S. at 341).

That Congress intended the free-choice-of-provider requirement to create an individual right is evident; Arizona does not contend otherwise. The statutory language unambiguously confers such a right upon Medicaid-eligible patients, mandating that all state Medicaid plans provide that "*any individual* eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required." 42 U.S.C. § 1396a(a)(23) (emphasis added). "While express use of the term 'individuals' (or 'persons' or similar terms) is not essential to finding a right for § 1983 purposes, usually such use is sufficient for that

purpose." *Ball v. Rodgers*, 492 F.3d 1094, 1108 (9th Cir. 2007); *see also Gonzaga*, 536 U.S. at 284 (pointing to similarly individually focused language in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as prototypical examples of rights-creating language). The two other federal circuits that have directly considered the Medicaid free-choice-of-provider provision under the *Blessing/Gonzaga* framework have agreed that it contains rights-creating language sufficient to establish the first *Gonzaga* requisite for a right enforceable under § 1983. *See Planned Parenthood of Ind.*, 699 F.3d at 974; *Harris*, 442 F.3d at 461.[5]

Nor does Arizona question whether the statute is "couched in mandatory, rather than precatory, terms," *Blessing*, 520 U.S. at 347, as it indubitably is. *See* 42 U.S.C. § 1396a(a) ("A State plan for medical assistance must—").

Arizona's § 1983 challenge centers, instead, on the "vague and amorphous" prong of the *Blessing/Gonzaga* standard. *See Blessing*, 520 U.S. at 340–41. The concern underlying this factor is that some statutory rights do not give courts "meaningful instruction" for the resolution of particular cases. *Watson v. Weeks*, 436 F.3d 1152, 1162 (9th Cir. 2006). Where a provision "suppl[ies] concrete and objective standards for enforcement," that concern does not arise. *Id.* at 1161. In the Medicaid Act context, a provision will satisfy this prong of the *Blessing/Gonzaga* "right" requirement if a state's compliance with the provision can be ascertained by reviewing "sources such as a state's Medicaid

---

[5] *Harris* was cited with approval by this court in *Ball*, 492 F.3d at 1109.

plan, agency records and documents, and the testimony of Medicaid recipients and providers." *Ball*, 492 F.3d at 1115.

The free-choice-of-provider requirement does "supply concrete and objective standards for enforcement." *Watson*, 436 F.3d at 1161. The provision specifies that any individual Medicaid recipient is free to choose any provider so long as two criteria are met: (1) the provider is "qualified to perform the service or services required," and (2) the provider "undertakes to provide [the recipient] such services." 42 U.S.C. § 1396a(23)(A). These are objective criteria, well within judicial competence to apply. The second criterion raises a simple factual question no different from those courts decide every day. For example, a doctor could establish that requisite by submitting a declaration or sworn testimony that she is willing to provide Medicaid patients with the service in question. The first criterion, whether the doctor is qualified to do so, may require more factual development or expert input, but still falls well within the range of judicial competence. The requirement could be established, for example, by a combination of evidence as to the medical licenses the doctor holds and evidence as to the licenses necessary under state law to perform family planning services. Together, the two criteria do not require courts to engage in any balancing of competing concerns or subjective policy judgments, but only to answer factual, yes-or-no questions: Was an individual denied the choice of a (1) qualified and (2) willing provider? The answer to these questions is "likely to be readily apparent." *Harris*, 442 F.3d at 462.

Arizona contends otherwise, seizing on the statutory term "qualified" as "too vague for the court to enforce." We disagree.

*Watson* held that a provision requiring states to set "*reasonable* [eligibility] standards" was too vague for judicial enforcement because the provision did not tie "reasonableness" to any objective standard. 436 F.3d at 1162 (citation and quotation marks omitted) (emphasis added). By contrast, the statutory term here, "qualified," is tethered to an objective benchmark: "qualified *to perform the service or services required*." 42 U.S.C. § 1396a(a)(23)(A) (emphasis added). A court can readily determine whether a particular health care provider is qualified to perform a particular medical service, drawing on evidence such as descriptions of the service required; state licensing requirements; the provider's credentials, licenses, and experience; and expert testimony regarding the appropriate credentials for providing the service. This standard is not subjective or amorphous, and requires no balancing.[6] It is no different from the sorts of qualification or expertise assessments that courts routinely make in various contexts.

---

[6] Arizona also argues that the right is too vague to be judicially enforceable because "it would be a usurpation of [Arizona's] delegated power [to define provider qualifications under state law] for a court to second-guess Arizona's determination." This argument is inapposite to the second *Blessing* prong, which asks only whether the provision in question provides adequate guidance for judicial application, not whether the right that the provision confers impinges upon any other concerns, constitutional or otherwise. Whether the Medicaid Act's free-choice-of-provider provision impermissibly interferes with state police powers goes to the merits of an action brought under the provision, not whether the provision supports a right of action under § 1983. In any event, Arizona's argument lacks merit. A court applying the free-choice-of-provider provision in a § 1983 case does not usurp a state's authority to set medical qualifications; instead, it defers to and applies the state's own determination of appropriate qualifications for the services provided.

In light of the foregoing analysis, we hold that Medicaid beneficiaries enjoy an unambiguously conferred individual right to a free choice of provider under § 1396a(a)(23). Arizona makes no attempt to demonstrate that Congress has expressly or impliedly foreclosed § 1983 remedies for this right, nor would any such attempt succeed. *See Ball*, 492 F.3d at 1116–17. Medicaid's free-choice-of-provider requirement therefore creates a right that may be enforced under § 1983.

### B.  HB 2800 Violates § 1396a(a)(23)

We now turn to the merits of the case: whether HB 2800, as applied in the context of Arizona's Medicaid program, violates the Medicaid Act's free-choice-of-provider requirement.[7]

**1.** We begin, as always, with the "cardinal canon" of statutory construction: Congress "says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). "In determining the scope of a statute," we "giv[e] the words used their ordinary meaning," *Moskal v. United States*, 498 U.S. 103, 108 (1990) (internal quotation marks and citation omitted), unless Congress has directed us to do otherwise.

---

[7] This case only concerns HB 2800's application in the context of withholding Medicaid reimbursement. We express no opinion on HB 2800's validity as applied in the context of state programs not governed by the Medicaid Act.

The relevant Medicaid provision states:

> A State plan for medical assistance must . . . provide that (A) any individual eligible for medical assistance . . . may obtain such assistance from *any* institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . , who undertakes to provide him such services, and (B) an enrollment of an individual eligible for medical assistance in a primary care case-management system . . . , a medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive [family planning services] . . . .

42 U.S.C. §§ 1396a(a)(23) (emphasis added). "'[A]ny means all" except to the extent that "Congress . . . add[s] language limiting the breadth of that word." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) (internal quotation marks and citation omitted). So a state Medicaid plan must allow any given Medicaid recipient to seek family planning care from any and all providers, subject only to two limitations: (1) the provider is "qualified to perform the service or services required" and (2) the provider "undertakes to provide [the patient] such services." We agree with the Seventh Circuit that "[r]ead in context, the term 'qualified' as used in § 1396a(a)(23) unambiguously relates to a provider's . . . . capab[ility] of performing the needed medical services in a professionally competent, safe, legal, and ethical manner." *Planned Parenthood of Ind.*, 699 F.3d at 978. Our reasons for so concluding are several.

First, the term "qualified" is not specially defined within the Medicaid Act. We therefore read that term, as it appears in § 1396a(a)(23), as conveying its ordinary meaning, which is: "having an officially recognized qualification to practice as a member of a particular profession; fit, competent." Oxford English Dictionary (3d ed. 2007); *see also* Black's Law Dictionary (9th ed. 2009) ("[p]ossessing the necessary qualifications; capable or competent"). And, as the overall context of the Medicaid Act is the provision of medical services, the pertinent professions which providers must be "qualified" to practice are the various medical professions.

Second, were there any doubt as to how we should read the word "qualified" in § 1396a(a)(23), Congress removed it by adding the further specification "qualified *to perform the service or services required*." 42 U.S.C. § 1396a(a)(23)(A) (emphasis added). We must "give effect, if possible, to every . . . word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (internal quotation marks omitted). Here, the words "to perform the service or services required" modify the adjective "qualified," telling us that Congress meant for that adjective not to refer to a Medicaid Act-specific authorization, but to denote the capability to carry out a particular *activity* — "perform[ing] the [medical] service" that a given Medicaid recipient requires. The provision thus indexes the relevant "qualifications" not to any Medicaid-specific criteria (whether imposed by the federal government or the states), but to factors external to the Medicaid program; the provider's competency and professional standing as a medical provider generally. The verb "perform" here is key: It confirms that the relevant question is not whether the provider is qualified in some sense specific to Medicaid patients, but simply whether the provider is qualified in a general sense to *perform*, i.e., *carry*

*out*, the service in question, whether for Medicaid patients or for any other patients. *See* "perform," Oxford English Dictionary (9th ed. 2009) (I.1.a: "to carry out in action, execute, or fulfil"; I.2.b: "To do, carry out, execute, or accomplish . . . an action, operation, process, function . . .").

Arizona urges us to read § 1396a(a)(23) as having the opposite meaning from the one we ascribe to it: Rather than guaranteeing patient choice, Arizona contends in its briefs, the provision empowers states to *restrict* patient choice to a limited list of providers "for any reason supplied by State law." Arizona's argument hinges on construing the statutory term "qualified" not according to its ordinary meaning, but instead as a Medicaid-specific term of art conferring upon the states plenary authority to withhold Medicaid funds on any policy grounds they prefer to pursue. Under Arizona's reading, states can determine for any reason that a provider is not qualified for Medicaid purposes, even if the provider *is* otherwise legally qualified, through training and licensure, to provide the requisite medical services within the state.

There are three fatal flaws with Arizona's reading of the statute. The first, to restate the obvious, is that "[i]n determining the scope of a statute," we do "giv[e] the words used their ordinary meaning," *Moskal*, 498 U.S. at 108 (internal citation and quotation marks omitted), unless the statute directs us to do otherwise. As a court, "we are not vested with the power to rewrite" the Medicaid Act, "but rather must construe what Congress has written." *See Ariz. State Bd. of Educ. for Charter Sch. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1007 (9th Cir. 2006) (internal quotation marks omitted). Nowhere in the Medicaid Act has Congress given a special definition to "qualified," much less indicated that

each state is free to define this term for purposes of its own Medicaid program however it sees fit.

Second, as a court, we have a "duty to give effect, if possible, to every . . . word of a statute." *Menasche*, 348 U.S. at 538–39 (internal quotation marks omitted); *see also United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013). "It is for us to ascertain — neither to add nor to subtract, neither to delete nor to distort." *Ariz. State Bd.*, 464 F.3d at 1007 (quoting *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596 (1951)). Arizona's reading detaches the word "qualified" from the phrase in which it is embedded; "qualified to perform the service or services required" (and from the overall context of the Medicaid statute, which governs *medical* services).

Additionally, "[w]e must avoid an interpretation that would produce absurd results." *LKAV*, 712 F.3d at 444 (internal quotation marks omitted). Read as Arizona suggests, the free-choice-of-provider requirement would be self-eviscerating. "If the states are free to set any qualifications they want — no matter how unrelated to the provider's fitness to treat Medicaid patients — then the free-choice-of-provider requirement could be easily undermined by simply labeling any exclusionary rule as a 'qualification.'" *Planned Parenthood of Ind.*, 699 F.3d at 978.

For instance, were Arizona free to define "qualified" for § 1396a(a)(23) purposes to mean doctors who do not perform elective abortions, then another state might be equally free to extend Medicaid funds only to doctors who *do* perform such abortions. If a state wished to interpret "qualified" to mean only osteopaths (or only M.D.'s), or only non-smokers (or only smokers), or only affiliates of the state university

medical school, on the grounds that only doctors within that category are worthy of receiving Medicaid funds, then, on Arizona's reading of § 1396a(a)(23), it would be free to do so. Giving the word "qualified" such an expansive meaning would deprive the provision within which it appears of any legal force. Moreover, that interpretation would permit states freely to erect barriers to Medicaid patients' access to family planning medical providers others in the state are free to use. Such a result would eliminate "the broad access to medical care that § 1396a(a)(23) is meant to preserve." *Planned Parenthood of Ind.*, 699 F.3d at 978. "When a natural reading of [a statute] leads to a rational, common-sense result, an alteration of meaning is not only unnecessary, but also extrajudicial." *Ariz. State Bd.*, 464 F.3d at 1008.

Finally, the free-choice-of-provider provision appears in a list of *mandatory* requirements that apply to all state Medicaid plans. On Arizona's reading, however, the free-choice-of-provider provision does not set any requirement at all for state plans. Instead, it permits states self-referentially to impose for Medicaid purposes whatever standards for provider participation it wishes.

For all these reasons, the free-choice-of-provider provision unambiguously requires that states participating in the Medicaid program allow covered patients to choose among the family planning medical practitioners they could use were they paying out of their own pockets.

**2.** While we could perhaps stop there, we recognize that "a section of a statute should not be read in isolation from the context of the whole Act." *Richards v. United States*, 369 U.S. 1, 11 (1962). Taking that broader approach, we conclude that our reading of § 1396a(a)(23) is bolstered

rather than undermined by considering its statutory context. Even if the word "qualified" within the free-choice-of-provider requirement were ambiguous in isolation — which, for all the reasons we have surveyed, it is not — it would lose all trappings of ambiguity when considered within the Medicaid Act as a whole.

Elsewhere in the Act, Congress has enumerated specific circumstances under which the HHS Secretary may waive a state's compliance with the free-choice-of-provider requirement enunciated in § 1396a(a)(23). For example, § 1396n(b) authorizes the HHS Secretary to grant "[w]aivers to promote cost-effectiveness and efficiency." Under that subsection, the Secretary may waive the free-choice-of-provider requirement so that a state may implement a managed-care system, 42 U.S.C. § 1396n(b)(1), or limit Medicaid recipients' choice of providers to those "who meet, accept, and comply with [state] reimbursement, quality, and utilization standards," *id.* § 1396n(b)(4). As another example, § 1315 authorizes the Secretary to waive the free-choice-of-provider requirement to the extent necessary for a state to carry out an approved "demonstration project." *Id.* §§ 1315(a)–(a)(1).

If Arizona's reading of § 1323a(a)(23) were correct, these waiver provisions would be unnecessary. After all, it is Arizona's position that states can preclude Medicaid beneficiaries from choosing otherwise appropriate service providers by defining certain classes of providers as "unqualified," for § 1323a(a)(23) purposes, "for any reason supplied by State law." If that were so, then states would not need to go to the trouble of requesting waivers of § 1323a(a)(23) from HHS to implement managed-care systems or hold providers to state efficiency standards. They

could simply define all non-preferred providers as "unqualified" for the purposes of § 1323a(a)(23).

Arizona agrees that we must read § 1396a(a)(23) within its statutory context, but points instead to a different provision of the Medicaid Act, the authority-to-exclude provision at § 1396a(p)(1). That component of the Act provides:

> In addition to any other authority, a State may exclude any individual or entity for purposes of participating under the State plan . . . for any reason for which the Secretary could exclude the individual or entity . . . under section 1320a-7, 1320a-7a, or 1395cc(b)(2) of this title.

42 U.S.C. § 1396a(p)(1). Arizona reads the phrase "[i]n addition to any other authority" to mean that states have plenary authority to exclude providers from their Medicaid plans. Just as Indiana did in defending its similar law, Arizona "reads the phrase for more than it's worth." *Planned Parenthood of Ind.*, 699 F.3d at 979. This standard savings clause "signals only that what follows is a non-exclusive list" and "does not imply that the states have an unlimited authority to exclude providers for any reason whatsoever." *Id.*[8]

---

[8] Arizona also cites the regulation implementing § 1396a(p)(1). That regulation provides, "Nothing contained *in this part* should be construed to limit a State's own authority to exclude an individual or entity from Medicaid for any reason or period authorized by State law." 42 C.F.R. § 1002.2 (emphasis added). That provision is only a limitation on interpretation of the referenced "part" of the regulations — Title 42, Chapter V, Subchapter B, Part 1002 — which does not encompass the

Moreover, to the extent that § 1396a(p)(1) sheds light on § 1396a(a)(23), it does so in a way that undermines, rather than aids, Arizona's argument. The language refers to "any *other* authority" (emphasis added), followed by a provision providing states with authority to exclude providers on specified grounds. This sequence indicates that the Medicaid Act itself must provide that "other" authority, just as it supplies the "authority" covered by the rest of the subsection. Were it otherwise — were states free to exclude providers as they see fit — then the bulk of § 1396a(p)(1) itself would be unnecessary, as the "authority" it supplies would be superfluous.

Further, the bases for excluding a provider from a state Medicaid plan cross-referenced by § 1396a(p)(1) all refer to "various forms of malfeasance such as fraud, drug crimes, and failure to disclose necessary information to regulators." *Planned Parenthood of Ind.*, 699 F.3d at 979. Read in context, the § 1396a(p)(1) savings clause empowers states to exclude individual providers on such grounds directly, without waiting for the Secretary to act, while also reaffirming state authority to exclude individual providers pursuant to analogous state law provisions relating to fraud or misconduct. It does not suggest that states may categorically exclude a class of providers on grounds unrelated to medical competency *or* legal and ethical propriety.

**3.** Both § 1396a(a)(23) itself and other provisions of the Medicaid Act admit of some exceptions to the free-choice-of-provider rule, but none apply to this case.

---

free-choice-of-provider requirement. *See* 42 C.F.R. § 1002.1 (listing statutory provisions providing authority for the regulations in Part 1002).

First, various provisions of the Medicaid Act allow states, as Arizona has done, to seek permission from HHS to limit recipients' choice to the extent necessary to implement cost-effectiveness standards or a demonstration project, *see, e.g.*, 42 U.S.C. § 1315 (describing waivers for demonstration projects); § 1396n(b) (describing waivers for efficiency), or, without a waiver, to exercise a statutory option to implement a managed-care system for Medicaid recipients, *see id.* § 1396u-2(a). These exceptions have no bearing on this case. Even if a state otherwise exercises its option to implement a managed-care system, § 1396a(a)(23)(B) makes clear that as to family planning services, state Medicaid plans must afford recipients the full range of free choice of provider. Similarly, efficiency waivers provided under § 1396n may never be used to "restrict the choice of the individual in receiving [family planning services]." *Id.* §§ 1396n(b), 1396d(a)(4)(C). And while Arizona's waiver is pursuant to § 1315, for demonstration projects — a type of waiver that can perhaps extend to family planning services if the Secretary so provides — the Secretary has not so provided for Arizona. Rather, as the district court determined, Arizona's waiver extends to the general free choice guarantee in § 1396a(a)(23)(A) only to the extent necessary to enroll recipients in managed care, and does not extend at all to the family planning services guarantee in § 1396a(a)(23)(B).

Second, § 1396a(a)(23) itself enumerates several exceptions to its scope. For example, it does not apply in Puerto Rico, Guam, or the Virgin Islands, nor does it interfere with states' separate statutory authority to subject new providers to a temporary moratorium under § 1396a(kk)(4). *See id.* § 1396a(a)(23)(B). The provision also specifies that it shall not be construed to require states to allow persons or entities "convicted of a felony . . . for an offense . . .

inconsistent with the best interests of beneficiaries" to participate in their Medicaid programs. *Id.* Again, none of these exceptions apply here; Arizona is not a territory exempt from the requirement, plaintiffs are not new providers being excluded pursuant to a temporary moratorium, and Arizona does not contend that any of the plaintiffs have been convicted of felonies.

Finally, several provisions of the Medicaid Act in addition to § 1396a(p)(1) recognize both federal and state authority to exclude individual providers from public health care programs on grounds related to fraud, patient abuse, criminal activity, improper billing or record-keeping, and the like. The Secretary is required to exclude providers convicted of certain crimes related to health care fraud, patient abuse, or controlled substances, *see* 42 U.S.C. § 1320a-7(a), and is also permitted to exclude providers for certain other enumerated reasons, including certain types of convictions, license revocations, failures to disclose, false representations, and defaults on loans, *see id.* § 1320a-7(b); *see also id.* § 1395cc(b)(2) (listing grounds on which Secretary may refuse to enter into or terminate a provider agreement). Another provision, the authority-to-exclude provision mentioned above, empowers states to exclude providers on any of these same grounds. *Id.* § 1396a(p)(1). Again, these exceptions do not apply here. HB 2800 does not set out grounds for excluding *individual* providers from Arizona's Medicaid program demonstrated to have engaged in some type of criminal, fraudulent, abusive, or otherwise improper behavior. Rather, it preemptively bars a *class* of providers on the ground that their scope of practice includes certain perfectly legal medical procedures.

For the same reason, none of the cases cited by Arizona in which courts have upheld the exclusion of particular providers from state Medicaid programs supports the proposition that states may exclude classes of providers from their Medicaid programs because of legislative disapproval of those providers' scope of services.

*Guzman v. Shewry*, 552 F.3d 941 (9th Cir. 2009), affirmed the denial of a preliminary injunction to a physician suspended from California's Medicaid program because he was the subject of a fraud investigation, pursuant to a state law requiring the temporary suspension of any provider under such an investigation. *Id.* at 950 (citing Cal. Welf. & Inst. Code § 14043.36(a)). In affirming the district court's denial of the injunction, *Guzman* held only that the Medicaid Act does not preempt state laws providing for suspension of providers in cases of possible fraud or abuse, as well as for other reasons having to do with "professional competence, professional performance, or financial integrity." *Id.* at 949 (quoting 42 U.S.C. § 1320a-7(b)(5)). *Guzman* did not address the free-choice-of-provider provision, and its holding is fully consistent with ours, as the Arizona statute here challenged restricts provider participation on none of the bases mentioned in *Guzman*.

Similarly, *Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577 (2d Cir. 1989), affirmed the denial of a preliminary injunction to a medical laboratory challenging its suspension from the New York Medicaid program because it was subject to a felony indictment in New Jersey for dumping hazardous waste. A New York state law authorized the suspension of any provider indicted for "an act which would be a felony under the laws of New York." *Id.* at 579 (quoting N.Y. Comp. Codes R. & Regs. tit. 18, § 515.7(b) (1988)).

Arizona reads *Plaza Health* to mean that states have "plenary . . . authority" to disqualify providers from Medicaid "for many reasons that advance State law and policy," such as a state policy against "engaging in industrial pollution." But the medical lab in *Plaza Health* was not categorically disqualified from New York's Medicaid program because of a generic policy disfavoring pollution; it was individually excluded because it had been indicted for a felony. No one questions Arizona's authority to exclude individual providers from its Medicaid program on the basis of criminal or fraudulent activity. Rather, Arizona seeks with HB 2800 to bar a class of providers from Medicaid not because of misconduct by particular providers, but because of blanket disapproval of those providers' *legal* scope of services.[9]

---

[9] Arizona also relies on *First Medical Health Plan, Inc. v. Vega-Ramos*, 479 F.3d 46, 53 (1st Cir. 2007), which upheld the exclusion of a provider from Puerto Rico's Medicaid program on the basis of a Puerto Rico law against self-dealing. Puerto Rico is exempt from the free-choice-of-provider requirement, *see* 42 U.S.C. § 1396a(a)(23)(B), so *Vega-Ramos* has no bearing on the Medicaid Act's applicability in states subject to that requirement.

In addition, Arizona invokes *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170 (2d Cir. 1991). *Kelly Kare* held that the free-choice-of-provider requirement does not give individual Medicaid recipients a liberty or property interest in continued care from a particular provider, so that a provider can therefore be excluded without due process for the recipients. *Id.* at 177–78. Here, the question is not the procedures due patients but the substantive protections provided by the statute. *Cf. Planned Parenthood of Ind.*, 699 F.3d at 977.

Finally, Arizona cites *Triant v. Perales*, 112 A.D.2d 548, 548 (N.Y. App. Div. 1985), in which an intermediate New York state court upheld a physician's exclusion from the New York Medicaid program because of "completely and utterly deficient" record-keeping, pursuant to a state regulation requiring Medicaid providers to maintain adequate records.

**4.** Arizona makes three final arguments in defense of HB 2800. First, Arizona contends that HB 2800 "does not offend" the free-choice-of-provider requirement because Planned Parenthood "remains able to create a separate entity to provide nonfederally qualified abortion services . . . and thereby remain eligible to provide Medicaid family planning services." Even assuming Arizona's separate entity interpretation of HB 2800 is viable — which is far from clear to us[10] — the separate entity argument is irrelevant. The Medicaid Act's free-choice-of-provider requirement does not include an exception allowing states to violate it so long as providers can spin off affiliates.

Second, Arizona argues that "implementation of [HB 2800] would result only in an incidental loss of family planning services" because Arizona has "approximately 2,000 Medicaid providers" of family planning services in addition to Planned Parenthood. Even if true — which Planned Parenthood contests — this fact is immaterial to whether HB 2800 violates the free-choice-of-provider requirement. As the Seventh Circuit noted in rejecting a similar argument made by Indiana, the free-choice-of-provider requirement "does not simply bar the states from ending *all* choice of providers, it guarantees to every Medicaid beneficiary the right to choose *any* qualified provider." *Planned Parenthood of Ind.*, 699 F.3d at 979. There is no exception to the free-choice-of-

---

*Triant* rested solely on New York state law and did not consider its interaction with the federal Medicaid Act.

[10] The most natural reading of the Arizona statute precludes Planned Parenthood from providing Medicaid-covered family planning services in clinics it "maintains or operates" if abortions are provided there, whether by itself or by separate entities. *See* Ariz. Rev. Stat. § 35-196.05(B).

provider requirement for "incidental" burdens on patient choice.

Finally, Arizona invokes the Tenth Amendment, urging this court to respect its "sovereign police power authority to regulate the health and welfare of its citizens." Whatever the scope of Arizona's Tenth Amendment powers to regulate health care, this case does not implicate them. Nothing in either the Medicaid Act's free-choice-of-provider requirement or the district court's order casts any doubt on Arizona's authority to regulate the practice of medicine within its borders. HB 2800 is a public funding statute, conditioning the receipt of state monies on the range of services that a health care provider offers; it does not have any effect on whether a provider is authorized to practice medicine in Arizona.

To the contrary, HB 2800's purpose is to exclude concededly qualified medical providers from eligibility for public funds unless they decline to perform elective abortions. Arizona has never claimed that Planned Parenthood's staff doctors are unqualified to perform gynecological exams or STD testing. Quite the opposite; the HB 2800 implementation letter made clear that if Planned Parenthood agreed to stop performing privately funded, elective abortions, it could continue providing all of its other services at public expense.

**5.** The parties have directed the court's attention to various agency interpretations of § 1396a(a)(23). Because "the term 'qualified' as used in § 1396a(a)(23) unambiguously refers to the provider's fitness to render the medical services required," *Planned Parenthood of Ind.*, 699 F.3d at 980, we need not and do not consider those

interpretations. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

## CONCLUSION

For the reasons explained above, the district court's summary judgment order and permanent injunction (Case No. 13-15506) are **AFFIRMED**. Arizona's appeal of the preliminary injunction (Case No. 12-17558) is **DISMISSED** as moot.