MELLOY, Circuit Judge,
dissenting.
Because I would join the four other circuit courts and numerous district courts that all have found a private right of enforcement under 42 U.S.C. § 1396a(a)(23)(A), I respectfully dissent. See Planned Parenthood of Gulf Coast, Inc. v. Gee, 862 F.3d 445 (5th Cir. 2017); Planned Parenthood Ariz. Inc. v. Betlach, 727 F.3d 960 (9th Cir. 2013); Planned Parenthood of Ind., Inc. v. Comm’r of Ind. State Dep’t of Health, 699 F.3d 962 (7th Cir. 2012); Harris v. Olszewski, 442 F.3d 456 (6th Cir. 2006).
In Blessing v. Freestone, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), the Supreme Court set forth .a three-factor test to determine whether a statutory provision creates a private right of action enforceable under 42 U.S.C. § 1983. Under that test, we consider (1) whether “Congress ... intended that the provision in question benefit the plaintiff’; (2) whether the right “is not so vague and amorphous that its enforcement would strain judicial competence”; and (3) whether the provision “impose[s] a binding obligation on the States.” Blessing, 520 U.S. at 340-41, 117 S.Ct. 1353 (citation and internal quotation marks omitted). Later, in Gonzaga University v. Doe, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), the Court amended the first prong of the analysis, holding that nothing “short of an unambiguously conferred right [will] support a cause of action brought under § 1983.”
This court has applied the Blessing test a number of times to other statutory provisions. See Spectra Commc’ns Grp., LLC v. City of Cameron, 806 F.3d 1113 (8th Cir. 2015) (finding no private right of action under 47 U.S.C. § 253); Midwest Foster Care & Adoption Ass’n v. Kincade, 712 F.3d 1190 (8th Cir. 2013) (finding no private right of action under 42 U.S.C. § 672(a)(1)); Ctr. for Special Needs Trust Admin., Inc. v. Olson, 676 F.3d 688 (8th Cir. 2012) (finding a private right of action under 42 U.S.C. § 1396p(d)(4)(C)); Lankford v. Sherman, 451 F.3d 496 (8th Cir. 2006) (finding no priyate right of action under 42 U.S.C. § 1396a(a)(17)); Walters v. Weiss, 392 F.3d 306 (8th Cir. 2004) (finding no private right of action under 42 U.S.C. § 657(a)); Mo. Child Care Ass’n v. Cross, 294 F.3d 1034 (8th Cir. 2002) (finding a private right of action under 42 U.S.C. § 672); Pediatric Specialty Care, Inc. v. Ark. Dep’t of Human Servs., 293 F.3d 472 (8th Cir. 2002) (finding a private right of action under 42 U.S.C. §§ 1396a(a)(10)(A), (a)(43), and 1396d(a, r)). Although the majority focuses on the Gonzaga analysis, I do not read the majority opinion to suggest that Blessing has been overruled.
*1050 Applying the Blessing/Gonzaga framework in the present case, I would hold that 42 U.S.C. § 1396a(a)(23)(A), the “freedom-of-choice provision,” does create a private right of action. This provision unambiguously confers an individual right to Medicaid-eligible patients. Section 23(A) states that “any individual eligible for medical assistance” can obtain that assistance from a provider of their choice. 42 U.S.C. § 1396a(a)(23)(A) (emphasis added). Thus, this provision is “phrased in terms of the persons benefitted,” Gonzaga, 536 U.S. at 284, 122 S.Ct. 2268 (quoting Cannon v. Univ. of Chi., 441 U.S. 677, 692 & n.13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)), and uses “individually focused terminology,” id. at 287, 122 S.Ct. 2268. See O’Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 785, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980) (The freedom-of-choice provision “gives recipients the right to choose among a range of qualified providers, without government interference. By implication, it also confers an absolute right to be free from government interference with [that] choice[.]” (emphasis added and omitted)); see also Gee, 862 F.3d at 459; Betlach, 727 F.3d at 966-67; Planned Parenthood of Ind., 699 F.3d at 974; Harris, 442 F.3d at 461-62.
Further, the freedom-of-choice provision “is not so vague and amorphous that its enforcement would strain judicial competence.” Blessing, 520 U.S. at 340-41, 117 S.Ct. 1353 (citation and internal quotation marks omitted). The provision states that a Medicaid-eligible individual “may obtain ,.. assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required ..., who undertakes to provide him such services.” 42 U.S.C. § 1396a(a)(23)(A). Thus, there are two criteria providers must meet: (1) the provider must be “qualified to perform the service or services required”; and (2) the provider must “undertake[ ] to provide ... such services.” Id: As the Ninth Circuit stated, “the two criteria do not require courts to engage in any balancing of competing concerns or subjective policy judgments, but only to answer factual yes-or-no questions: Was an individual denied the choice of a (1) qualified and (2) willing provider? The answer to these questions is ‘likely to be readily apparent.’ ” Betlach, 727 F.3d at 967 (quoting Harris, 442 F.3d at 462). The Ninth Circuit further explained:
A court can readily determine whether a particular health care provider is qualified to perform a particular medical service, drawing on evidence such as descriptions of the service required; state licensing requirements; the provider’s credentials, licenses, and experience; and expert testimony regarding the appropriate credentials for providing the service. This standard is not subjective or amorphous, and requires no balancing. It is no different from the sorts of qualification or expertise assessments that courts routinely make in various contexts.
Id. at 968 (footnote omitted). And as the Sixth Circuit noted, “while there may be legitimate debates about the medical care covered by or exempted from the freedom-of-choice provision, the mandate itself does not contain the kind of vagueness that would push the limits of judicial enforcement.” Harris, 442 F.3d at 462.
Moreover, the freedom-of-choice provision is a mandatory provision, Under the provision, states “must provide” the free choice of providers to Medicaid-eligible individuals. As a result, the freedom-of-choice provision unambiguously refers to Medicaid-eligible individuals and confers an individual entitlement: the right to receive medical services from any qualified provider of their choice. See Planned Paenthood of Ind., 699 F.3d at 974. Thus, I would hold that § 1396a(a)(23)(A) unam *1051 biguously creates a presumption of a private right enforceable under § 1983. See Gonzaga, 536 U.S. at 284, 122 S.Ct. 2268 (“Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983.”).
“The State may rebut this presumption by showing that Congress ‘specifically foreclosed a remedy under § 1983.’ ” Id. at 284 n.4, 122 S.Ct. 2268 (quoting Smith v. Robinson, 468 U.S. 992, 1004-05 & n.9, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984)). “Congress may do so expressly, by forbidding recourse to § .1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with . individual enforcement under § 1983.” Blessing, 520 U.S. at 341, 117 S.Ct. 1353. The major thrust of the majority’s opinion appears to rest on a finding that the Medicaid Act’s regulatory scheme rebuts any presumption of private enforceability. For several reasons, I disagree that the regulatory scheme is so comprehensive as to be a clear expression ' of Congress’s intent to preclude private enforcement.
First, the majority, ante, at 1040-42, finds that the freedom-of-choice provision does not unambiguously confer an individual right. In so finding, the majority considers the Medicaid Act as a whole to find that the freedom-of-choice provision is part of a directive to the Secretary of Health and Human Services. Such a broad focus is inappropriate. See Blessing, 520 U.S. at 342, 117 S.Ct. 1353 (“We [do] not ask whether the "federal ... legislation generally [gives] rise to rights; rather, we focus[] our analysis on a specific statutory provision.... ”); Golden State Transit Corp. v. City of L.A., 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) (asking whether the “provision in question” was designed to benefit the plaintiff). And such a broad analysis cannot stand because it is inconsistent with circuit precedent, which has found a private right of action under other provisions of the Medicaid Act. See Olson, 676 F.3d at 699-700 (finding a private right of action to enforce the Medicaid Act’s pooled trusts provision under 42 U.S.C. § 1396p(d)(4)(C)); Pediatric Specialty Care, 293 F.3d at 478-79 (finding a private right of action to challenge proposed state budget cutbacks that would violate the right to early and periodic screening, diagnosis, and treatment services under 42 U.S.C. §§ 1396a(a)(10)(A), (a)(43), and 1396d(a, r)).
Second, the majority, ante, at 1041, states that “[b]eeause other sections of the Act provide mechanisms to enforce the State’s obligation under § 23(A) to reimburse qualified providers who are chosen by Medicaid patients, it is reasonable to conclude that Congress did not intend to create an enforceable right for individual patients under § 1983.” However, “[t]he availability of administrative mechanisms to protect the plaintiffs interests” alone cannot.defeat the plaintiffs ability to invoke § 1983 so long as the other requirements of the three-part test are met. Blessing, 520 U.S. at 347, 117 S.Ct. 1353 (alteration in original) (quoting Golden State Transit Corp., 493 U.S. at 106, 110 S.Ct. 444).
Third, the majority, ante, at 1041-42, finds private enforcement foreclosed because § 23(A) is “part of a substantial compliance regime.” Thus, according to the majority, we can'“infer an aggregate focus for” § 23(A). I disagree that the substantial compliance regime supports a finding that Congress intended to foreclose private enforcement. In Blessing, the Court concluded that the enforcement scheme under Title IV-D of the Social Security Act was not sufficiently comprehensive to foreclose § 1983 liability. 520 U.S. at 348, 117 S.Ct. 1353. In so concluding, the Court *1052 noted the lack of any “private remedy— either judicial or administrative—through which aggrieved persons can seek redress.” Id. Further, the Court found that the Secretary of Health and Human Services’ “limited powers to audit [for substantial compliance] and cut federal funding” were not enough to foreclose private enforcement. Id. Similarly, in this case, the Secretary’s power to cut funding if a State is not in substantial compliance with § 1396a is not enough to foreclose private enforcement. And while a provider in Arkansas may file an administrative appeal and then seek judicial review of Arkansas’s decision to terminate the provider’s contract under Arkansas law, there is no remedy available for Medicaid-eligible individuals harmed by the termination decision.
Fourth, the majority relies on Arstrong v. Exceptional Child Center Inc., — U.S. —, 135 S.Ct. 1378, 191 L.Ed.2d 471 (2015), in reaching its decision. I do not read Armstrong to overrule or even undermine the reasoning of the other circuits that have addressed whether § 23(A) creates a private right of action under § 1983. Armstrong involved the Supremacy Clause and a claim for equitable relief under 42 U.S.C. § 1396a(a)(30)(A). There, it was undisputed that § 1983 was not an available remedy, as § 30(A) does not have any rights-creating language nor does it refer to individual Medicaid beneficiaries. Specifically, § 30(A) requires state Medicaid plans to:
provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan ... as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area. -...
42 U.S.C. § 1396a(a)(30)(A). The Supreme Court held that
[t]he provision for the Secretary’s enforcement by withholding funds might not, by itself, preclude the availability of equitable relief. But it does so when combined with the judicially unadmin-istrable nature of § 30(A)’s text. It is difficult to imagine a requirement broader and less specific than § 30(A)’s mandate that state plans provide for payments that are “consistent with efficiency, economy, and quality of care,” all the while “safeguarding] against unnecessary utilization of ... care and services.”
Armstrong, 135 S.Ct. at 1385 (second alteration and omission in original) (citation omitted) (quoting 42 U.S.C. § 1396a(a)(3.0)(A)). In contrast, § 23(A) has only two criteria, neither of which are too broad or too general for courts to consider. Thus, “[t]he provision for the Secretary’s enforcement by withholding funds” does not preclude private enforcement under § 1983.
Finally, -to the extent the majority discounts the four other circuits that have found a private right of action under the freedom-of-choice provision based upon an alleged evolution of law, ante, at 1042-43, I disagree.. The majority asserts that the Supreme Court’s opinions in Gonzaga and Armstrong overruled Wilder v. Virginia Hospital Association, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). In Wilder, the Court held that the Boren Amendment to the Medicaid Act created a private right of action because it “was intended] to benefit the putative plaintiff.” Id. at 509, 110 S.Ct. 2510 (alteration in original) (citation omitted). I do not dis *1053 pute the fact that Gonzaga amended that prong of the Blessing test. See Gonzaga, 536 U.S. at 283, 122 S.Ct. 2268 (“We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983.”). But I do not read the other circuits’ opinions to rely on Wilder in such a manner as to make those cáses bad law.
The, Fifth, Sixth, Seventh, and Ninth Circuits all applied the' Blessing/Gonzaga framework to hold that the freedom-of-choice provision creates a private right enforceable under § 1983. Gee, 862 F.3d at 457-61; Betlach, 727 F.3d at 966-67; Planned Parenthood of Ind., 699 F.3d at 972-74; Harris, 442 F.3d at 461-63. Notably, all of these opinions were issued after Wilder was, as the majority claims, overruled by Gonzaga. Further, only two of these opinions rely on Wilder. Planned Parenthood of Ind., 699 F.3d at 969, 974-76; Harris, 442 F.3d at 461, 463. And where those opinions do rely on Wilder, they do so for propositions that are unchallenged by subsequent caselaw. See Planned Parenthood of Ind., 699 F.3d at 969 (“Medicaid ‘is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals.’ ” (quoting Wilder, 496 U.S. at 502, 110 S.Ct. 2510)); id. at 974-75 (relying on Wilder to find that the Medicaid Act’s regulatory scheme was not sufficiently comprehensive to show Congressional intent to preclude § 1983 enforcement, the underlying reasoning of which is also supported by Blessing); Harris, 442 F.3d at 463 (same).. Most importantly, as noted above, all four circuits concluded, as required by Gonzaga, that the freedom-of-choice provision unambiguously confers a private right of action under § 1983. Gee, 862 F.3d at 458-59; Betlach, 727 F.3d at 966; Planned Parenthood of Ind., 699 F.3d at 974; Harris, 442 F.3d at 461. I therefore read those circuits’ opinions as persuasive authority that cannot be discounted by an alleged evolution of Supreme Court precedent.
I also disagree with the concurrence’s alternative argument for reversing the district court; O’Bannon held:
When enforcement of [minimum standards of care] requires decertification of a facility, there may be an immediate, adverse impact on some residents. But surely that impact, which is an indirect and incidental result of the Government’s enforcement action, does not amount to a deprivation of any interest in life, liberty, or property.
447 U.S. at 787, 100 S.Ct. 2467. As the Fifth Circuit recently explained, “the [O’Bannon] plaintiffs had no right to reside in an unqualified facility when the disqualification decision was connected to the state’s enforcement of its health and safety regulations.” Gee, 862 F.3d at 461. The language of the freedom-of-choice provision supports this understanding because the word “qualified” is modified by the phrase “to perform the service or services required.” 42 U.S.C. § 1396(a)(23)(A). “The provision thus indexes the relevant ‘qualifications’ not to any Medicaid-specific criteria (whether imposed by the federal government or the states), but to factors external to the Medicaid program; the provider’s competency and professional standing as a medical provider generally.” Betlach, 727 F.3d at 969.
Here, like in Gee, Arkansas did not de-certify Planned Parenthood as a medical provider. Rather, the state terminated only Planned Parenthood’s Medicaid Provider Agreement; Planned Parenthood is still licensed to serve other patients. See Gee, 862 F.3d at 461 (discussing the State’s actions and explaining that “[t]he Individu *1054 al Plaintiffs in this case are trying to sustain their ‘right to choose among a range of qualified providers, without government interference’—a right explicitly recognized in O’Bannon.” (quoting O’Bannon, 447 U.S. at 785, 100 S.Ct. 2467 (emphasis in original))). The plaintiffs in this case do not claim that the freedom-of-choice provision entitles them to choose a provider rightfully disqualified from the pool of Medicaid providers. See Planned Parenthood of Ind., 699 F.3d at 978-80 (discussing the State’s limited authority to disqualify providers). Instead, they argue that Arkansas’s termination of the Medicaid Provider Agreement constitutes government interference with their freedom of choice. If the right is given the construction the concurrence suggests, “the free-choice-of-provider requirement would be self-eviscerating.” Betlach, 727 F.3d at 970; see Planned Parenthood of Ind., 699 F.3d at 978 (“If the states are free to set any qualifications they want—no matter how unrelated to the provider’s fitness to treat Medicaid patients—then the free-choice-of-provider requirement could be easily undermined by simply labeling any exclusionary rule as a ‘qualification.’ ”). And while it is true that a state may terminate a Medicaid provider on many grounds, the provision the concurrence cites, 42 U.S.C. § 1396a(p)(1), cross-references other provisions of the Medicaid Act limiting the state’s authority to make qualification decisions to “various forms of malfeasance such as fraud, drug crimes, and failure to disclose necessary information to regulators.” Planned Parenthood of Ind., 699 F.3d at 979. The provisions do not grant plenary power to the states to make these determinations. Betlach, 727 F.3d at 971-72; Planned Parenthood of Ind., 699 F.3d at 979.
Based on the foregoing discussion, I would hold that the freedom-of-choice provision does create an individual right enforceable under § 1983. That right allows individuals to challenge a state’s actions when a provider’s Medicaid Agreement is terminated for reasons unrelated to the provider’s qualifications. Additionally, I agree with the district court’s analysis of the Dataphase factors governing the issuance of an injunction.[9] As a result, I would affirm the orders of the district court enjoining the Arkansas Department of Human Services from suspending Medicaid payments.

. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc) ("[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.”).