BACHARACH, J., concurring in part and dissenting in part.
A preliminary injunction would be appropriate only if the Jane Doe plaintiffs had standing and were likely to succeed on the merits. I agree with the majority that the Jane Doe plaintiffs lacked standing as to Planned Parenthood of the Saint Louis Region and Southwest Missouri (referred to below as "PPSLR") because they had not alleged any desire to obtain medical care from this affiliate. But I also believe the Jane Doe plaintiffs lacked an enforceable right to challenge Kansas's action as to Planned Parenthood of Kansas and Mid-Missouri (referred to below as "PPKM"). Thus, I would reverse the grant of a preliminary injunction to the Jane Doe plaintiffs as to both affiliates.
For PPKM, the Jane Doe plaintiffs could prevail on the merits only by showing that they had an enforceable right to challenge what Kansas did. The burden on the Jane Doe plaintiffs was stiff, for the Supreme Court has held that a right is individually enforceable only if it was unambiguously conferred. If an individually enforceable right existed here, its scope would have been ambiguous because of the combination of two provisions in Medicaid: § 1396a(a)(23) and § 1396a(p)(1).
Under 42 U.S.C. § 1396a(a)(23), the free-choice-of-provider clause, state Medicaid programs must provide that Medicaid patients can obtain medical care from any willing, qualified provider. Kansas's program satisfied this requirement by providing that Medicaid patients could obtain medical care from qualified providers. But other federal Medicaid provisions allow states to exclude providers even when they are considered "qualified" under the free-choice-of-provider clause. These provisions include 42 U.S.C. § 1396a(p)(1), which allows states to exclude medical providers for violating state laws that serve a Medicaid-related goal.
Based on § 1396a(p)(1), Kansas terminated PPKM, contending that it had violated such state laws; the Jane Doe plaintiffs disagreed and sought to litigate whether the Kansas laws had been properly applied. The Jane Doe plaintiffs thus brought a § 1983 lawsuit for violation of their rights under the free-choice-of-provider clause.
The resulting issue is whether this clause unambiguously provided the Jane Doe plaintiffs with an enforceable right to have states properly apply their state laws (authorized by § 1396a(p)(1) ) to Medicaid providers. In this context, the applicability of the free-choice-of-provider clause was ambiguous, which is not enough for an individually enforceable right. Thus, the Jane Doe plaintiffs were unlikely to succeed on the merits and the district court should have denied the motion for a preliminary injunction with regard to PPKM.
I. The district court granted a preliminary injunction.
Acting through the Kansas Department of Health and Environment, the State of Kansas terminated participation in Medicaid *1239 by two Planned Parenthood affiliates-PPKM and PPLSR.[1] In terminating the two affiliates, Kansas relied on its findings involving violations of state law.[2]
Following the terminations, PPKM, PPSLR, and three "Jane Doe" patients of PPKM brought a 42 U.S.C. § 1983 claim in federal district court, alleging that Kansas's decision violated the Medicaid Act's free-choice-of-provider clause.[3]
The plaintiffs moved for a preliminary injunction. Following a hearing, the district court granted the motion by the Jane Doe plaintiffs, preliminarily barring termination of PPKM and PPSLR. Planned Parenthood of Kan. & Mid-Mo. v. Mosier , No. 16-2284-JAR-GLR, 2016 WL 3597457, at *25 (D. Kan. July 5, 2016).[4]
In granting the preliminary injunction, the district court concluded that the case was justiciable and that abstention was unnecessary. The court then considered the factors for a preliminary injunction, including whether the plaintiffs were likely to succeed on the merits. See Diné Citizens Against Ruining Our Env't v. Jewell , 839 F.3d 1276, 1281 (10th Cir. 2016).[5] In applying this factor, the court first addressed whether the plaintiffs had a cause of action under § 1983 to enforce the free-choice-of-provider clause. The court held that the Jane Doe plaintiffs had a cause of action and that it was broad enough to encompass the claims brought by the Jane Doe plaintiffs.
II. For PPKM, any individual right would not have been broad enough for the Jane Doe plaintiffs to challenge Kansas's termination under § 1396a(p)(1).
For PPKM, the critical question is the scope of the Jane Doe plaintiffs' alleged right under the free-choice-of-provider clause. In district court, Kansas argued that
• it had excluded PPKM based on § 1396a(p)(1) and
• the Jane Doe plaintiffs lacked an unambiguous right allowing them to challenge Kansas's application of § 1396a(p)(1).
The district court rejected these arguments, holding that the Jane Doe plaintiffs could challenge Kansas's determination that PPKM had violated state law. The *1240 court reasoned that if the result were otherwise, a state could simply evade judicial review by improperly terminating a provider under state law:
If a State could defeat a Medicaid recipient's right to select a particular qualified healthcare provider merely by terminating its agreement with that provider on an unlawful basis, the right would be totally eviscerated.
Planned Parenthood of Kan. & Mid-Mo. v. Mosier , No. 16-2284-JAR-GLR, 2016 WL 3597457, at *17 (D. Kan. July 5, 2016) (quoting Planned Parenthood Se., Inc. v. Bentley , 141 F.Supp.3d 1207, 1218 (M.D. Ala. 2015) ).
This reasoning led the court to consider whether PPKM had violated Kansas law. The court answered "no" and concluded, as a result, that Kansas had likely violated the free-choice-of-provider clause. Because the other preliminary-injunction factors supported the Jane Doe plaintiffs, the district court granted the motion for a preliminary injunction.
Kansas appeals, presenting four pertinent arguments as to PPKM[6] :
1. This case is not justiciable.
2. The district court should have abstained.
3. The plaintiffs lack an individually enforceable right under the free-choice-of-provider clause.
4. Even if an individually enforceable right existed, it would not allow the plaintiffs to challenge Kansas's actions, which were based on Kansas law as authorized by 42 U.S.C. § 1396a(p)(1).
I agree with the majority that the case is justiciable and that the district court had no need to abstain. I will also assume, for the sake of argument, that the Jane Doe plaintiffs have an individual right under the free-choice-of-provider clause. The resulting question entails the extent of that right.
Under the free-choice-of-provider clause, the state's Medicaid program must provide that Medicaid patients can obtain medical care from qualified providers. 42 U.S.C. § 1396a(a)(23). Kansas's Medicaid program complied with this requirement, for the program's only exclusions were based on provisions authorized by Medicaid itself.[7]
Kansas terminated PPKM for purportedly violating Kansas laws authorized by a separate Medicaid provision: 42 U.S.C. § 1396a(p)(1). In light of this termination, the Jane Doe plaintiffs seek to litigate whether PPKM actually violated Kansas law. But the Jane Doe plaintiffs can litigate this issue only if their underlying right unambiguously extends to Kansas's application of its own state law. See Harris v. James , 127 F.3d 993, 1011-12 (11th Cir. 1997).[8]
*1241 As a result, we must ask: Has Congress unambiguously conferred the Jane Doe plaintiffs with a right to have states properly apply their laws (authorized by § 1396a(p)(1) ) to Medicaid providers? Or, as the text of the free-choice-of-provider clause suggests, has Congress conferred the Jane Doe plaintiffs with only a right to be covered under a program (like Kansas's program) that does not contain unauthorized exclusionary provisions? In my view, the answer is-at best-ambiguous. Thus, if an individually enforceable right existed here, it would not encompass a challenge to Kansas's termination of PPKM.
A. Standard of Review
We review the district court's grant of a preliminary injunction for an abuse of discretion. Verlo v. Martinez , 820 F.3d 1113, 1124 (10th Cir. 2016). The court abuses its discretion when committing an error of law or making factual findings that are clearly erroneous. Id. In my view, the district court committed a legal error by ruling that the Jane Doe plaintiffs could litigate Kansas's application of its laws authorized by § 1396a(p)(1).
B. Section 1983
This suit is brought under § 1983, not the Medicaid Act. Thus, we must start with the scope of § 1983. This statute creates a private right of action for U.S. citizens denied rights created by federal laws. 42 U.S.C. § 1983. But § 1983 does not authorize relief for every violation of federal law. City of Rancho Palos Verdes v. Abrams , 544 U.S. 113, 119, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005).
To determine whether § 1983 provides a mechanism for relief, the Jane Doe plaintiffs must demonstrate that Congress intended to create an enforceable right. Id. at 120, 125 S.Ct. 1453. The Supreme Court said in Gonzaga University v. Doe that a right is individually enforceable only if Congress had unambiguously created that right. 536 U.S. 273, 283-84, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). "After Gonzaga , an enforceable private right exists only if the statute contains nothing 'short of an unambiguously conferred right' and not merely a vague benefit or interest." Mandy R. ex rel. Mr. & Mrs. R. v. Owens , 464 F.3d 1139, 1147 (10th Cir. 2006) (quoting Gonzaga , 536 U.S. at 283, 122 S.Ct. 2268 ). It is not enough simply to show that a plaintiff "falls within the general zone of interest that the statute is intended to protect." Gonzaga , 536 U.S. at 283, 122 S.Ct. 2268.
C. Medicaid
We must apply this § 1983 requirement against the backdrop of Medicaid.
Medicaid is a cooperative federal-state program in which states obtain federal funds to provide medical care to needy individuals. Wilder v. Va. Hosp. Ass'n , 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). State participation is voluntary; but once states opt into the program, they must adhere to statutory requirements and regulations promulgated by the Secretary of Health and Human Services *1242 ("HHS"). Id. Congress has directed the HHS Secretary to withhold federal funds from states violating these requirements. 42 U.S.C. § 1396c.
To participate in Medicaid, states must obtain approval of their plans from the HHS Secretary. Wilder , 496 U.S. at 502, 110 S.Ct. 2510. These plans must describe the nature and scope of the state's proposed health-care program. Id. The statutory requirements for the plans are set forth in 42 U.S.C. § 1396a(a). One such requirement appears in the free-choice-of-provider clause underlying this suit.
Under this clause, a state plan must provide for eligible individuals to obtain medical care from any willing provider "qualified to perform the service." 42 U.S.C. § 1396a(a)(23)(A). Based on this provision, the Jane Doe plaintiffs claim that Kansas improperly terminated PPKM even though it was "qualified" to provide medical care.
But a federal court would ordinarily lack jurisdiction to consider a Medicaid recipient's claim involving the state's violation of its own Medicaid program. Concourse Rehab. & Nursing Ctr. Inc. v. DeBuono , 179 F.3d 38, 43-44 (2d Cir. 1999). To create federal jurisdiction, the Medicaid recipient must allege a conflict between the state Medicaid program and a federal law. Id. Thus, we must consider whether the Jane Doe plaintiffs have alleged a conflict between the Kansas Medicaid program and a federal law. See id.
The Jane Doe plaintiffs point to the free-choice-of-provider clause. Thus, we must first consider whether this clause provides Medicaid patients with a federal right enforceable under § 1983. Four circuits have said "yes";[9] one has said "no."[10] Today, the majority joins the four circuits that have answered "yes." Majority Op. at 1224. We can assume, for the sake of argument, that the majority is right.
With this assumption, we must consider whether the Jane Doe plaintiffs have alleged a conflict between Kansas's Medicaid program and the free-choice-of-provider clause. To answer that question, we must determine the scope of this clause. At first glance, the free-choice-of-provider clause might appear to force a state to allow any qualified provider into the state's Medicaid program. But "Medicaid's freedom of choice provision is not absolute." Kelly Kare, Ltd. v. O'Rourke , 930 F.2d 170, 177 (2d Cir. 1991). Rather, Medicaid allows states to exclude providers from Medicaid, sometimes even when the providers are qualified. E.g. , 42 U.S.C. § 1396a(a)(39), (p)(1).
For example, states can exclude providers from Medicaid for violating certain types of state laws. A state's authority to take such action stems partly from 42 U.S.C. § 1396a(p)(1), which is entitled "Exclusion power of State." Section 1396a(p)(1) identifies grounds for a state to exclude a provider:
In addition to any other authority, a State may exclude any individual or entity for purposes of participating under the State plan under this subchapter for any reason for which the Secretary could exclude the individual or entity from participation in a program under subchapter XVIII of this chapter under *1243 section 1320a-7, 1320a-7a, or 1395cc(b)(2) of this title.
42 U.S.C. § 1396a(p)(1).
The HHS implements § 1396a(p)(1) through a regulation, which states that the listed exclusion provisions are "[i]n addition to any other authority [a state] may have." 42 C.F.R. § 1002.3(a). This language is to be read broadly: "Nothing contained in this part should be construed to limit a State's own authority to exclude an individual or entity from Medicaid for any reason or period authorized by State law." Id. § 1002.3(b).
Kansas maintains that the legality of its actions is determined by § 1396a(p)(1), not the free-choice-of-provider clause, and argues that the Jane Doe plaintiffs therefore lacked an applicable right to challenge Kansas's application of its laws.
D. Section 1983 does not provide a mechanism for the Jane Doe plaintiffs to challenge Kansas's application of its laws authorized by § 1396a(p)(1).
To determine whether the free-choice-of-provider clause supports relief under § 1983, we must resolve two questions:
1. Do the pertinent Kansas laws fall within the scope of § 1396a(p)(1) ? I would answer "yes."
2. Does the free-choice-of-provider clause entitle the Jane Doe plaintiffs to challenge Kansas's application of these laws? If such an entitlement exists, it is at least ambiguous, which is fatal to the Jane Doe plaintiffs' claim.
1. Kansas's laws fall within § 1396a(p)(1).
Kansas terminated PPKM under Kansas Administrative Regulation § 30-5-60(a). This provision authorizes Kansas to terminate a provider that has violated applicable state regulations. Kan. Admin. Regs. § 30-5-60(a)(2). Invoking this authority, Kansas found that PPKM had violated a Kansas solid-waste regulation- § 28-29-16(a)(1) -by obstructing a solid-waste inspection of PPKM's facility. The resulting issue is whether Congress has authorized Kansas under § 1396a(p)(1) to exclude providers from Medicaid for violating Kansas's solid-waste regulation.
We begin with the statutory text. Landreth Timber Co. v. Landreth , 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985). The critical part of the statute is the word "any" in the phrase "any other authority." 42 U.S.C. § 1396a(p)(1). When construing the word "any," we consider its " 'ordinary meaning.' " Moskal v. United States , 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (quoting Richards v. UnitedStates , 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) ). The word "any" ordinarily means "[o]ne, some, every, or all without specification." The American Heritage College Dictionary 61 (3d ed. 1997). Thus, at first glance, § 1396a(p)(1) would appear to provide states with unchecked authority to exclude providers from Medicaid for any reason permitted by state law.
But we have always construed statutory language in context. United States v. Collins , 859 F.3d 1207, 1213 (10th Cir. 2017) ; see Christopher v. SmithKline Beecham Corp , 567 U.S. 142, 162, 132 S.Ct. 2156, 183 L.Ed.2d 153 (2012) ("[T]he modifier 'any' can mean 'different things depending upon the setting....' " (quoting Nixon v. Mo. Mun. League , 541 U.S. 125, 132, 124 S.Ct. 1555, 158 L.Ed.2d 291 (2004) ) ). The context here comprises Congress's list of permissible reasons for a state to terminate providers. See 42 U.S.C. § 1396a(p)(1). If Congress had intended to allow unlimited authority, the listed provisions in § 1396a(p)(1) would have been superfluous. See *1244 McDonnell v. United States , --- U.S. ----, 136 S.Ct. 2355, 2369, 195 L.Ed.2d 639 (2016) (recognizing a presumption that statutory language is not superfluous). Thus, the phrase "any other authority" in § 1396a(p)(1) must bear some limitation.
What is that limitation? To answer, we consider the canon of noscitur a sociis . Under this canon, an ambiguous term may be "given more precise content by the neighboring words with which it is associated." United States v. Williams , 553 U.S. 285, 294, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Thus, we consider the limitation of "any other authority" based on the surrounding words in the statute. United States v. Phillips , 543 F.3d 1197, 1206 (10th Cir. 2008).
In this case, the neighboring words in § 1396a(p)(1) are three specific statutory provisions that a state may invoke to justify a provider's termination: 42 U.S.C. §§ 1320a-7, 1320a-7a, and 1395cc(b)(2). See 42 U.S.C. § 1396a(p)(1) ("[A] State may exclude ... for any reason for which the Secretary could exclude ... under [§§] 1320a-7, 1320a-7a, or 1395cc(b)(2) of this title."). Having identified these three provisions, we should consider whether they help define the phrase "any other authority" in § 1396a(p)(1). See Ali v. Fed. Bureau of Prisons , 552 U.S. 214, 226, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008).[11]
The three cited statutes include grounds to exclude or terminate providers. See 42 U.S.C. §§ 1320a-7, 1320a-7a, 1395cc(b)(2). The Fifth, Seventh, and Ninth Circuits have observed that the grounds for termination involved "various forms of malfeasance," such as "fraud, drug crimes, and failure to disclose necessary information to regulators." Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health , 699 F.3d 962, 979 (7th Cir. 2012) ; Planned Parenthood of Gulf Coast, Inc. v. Gee , 862 F.3d 445, 469 (5th Cir. 2017) ; Planned Parenthood Ariz. Inc. v. Betlach , 727 F.3d 960, 972 (9th Cir. 2013). I agree with these courts. Thus, I too conclude that the phrase "any other authority" likely refers to state laws that prohibit acts of "malfeasance."
But what do we mean by "malfeasance"? The Fifth and Ninth Circuits answer that the state laws must address conduct "analogous" to what is covered in the three cited statutes. Planned Parenthood of Gulf Coast , 862 F.3d at 465 ; Planned Parenthood Ariz. , 727 F.3d at 972. The majority takes a similar approach. Majority Op. at 1230-31.
In my view, this approach rests on an unduly restrictive definition of "malfeasance." Certainly Congress intended to impose some limits on the states' adoption of Medicaid-related laws. But Congress intended to give states broad authority in light of the HHS regulations and the legislative history.
The regulations interpret the phrase "any other authority" in § 1396a(p)(1) to mean "any other authority [that a State ] may have ." 42 C.F.R. § 1002.3(a) (emphasis added). And the regulations allow a state to exclude a provider "for any reason or period authorized by state law." Id. § 1002.3(b) (emphasis added). In fact, when promulgating § 1002.3, the HHS Secretary expressly rejected a suggestion to add the words "for cause" into § 1002.3(b). See Amendments to OIG Exclusion and CMP Authorities Resulting from Public Law 100-93, *1245 57 Fed. Reg. 3298, 3322-23 (Jan. 29, 1992). The HHS Secretary explained that Congress had spoken broadly, so it was "up to the various courts and legislative bodies" to consider whether § 1396a(p)(1) had a limitation. Id. at 3323.
A Senate Report also indicates that Congress intended for § 1396a(p)(1) to provide the states with broad authority: "This provision is not intended to preclude a State from establishing, under State law, any other bases for excluding individuals or entities from its Medicaid program." S. Rep. No. 100-109, at 20 (1987) (emphasis added), as reprinted in 1987 U.S.C.C.A.N. 682, 700; see also First Med. Health Plan, Inc. v. Vega-Ramos , 479 F.3d 46, 53 (1st Cir. 2007) ("The legislative history clarifies that this 'any other authority' language was intended to permit a state to exclude an entity from its Medicaid program for any reason established by state law." (emphasis in original) ).
In light of the HHS regulations and the legislative history, the need to provide some limitation does not require us to narrowly read the phrase "any other authority." Doing so "would defeat Congress' intent to define [this phrase] in a broad manner." Christopher v. SmithKline Beecham Corp. , 567 U.S. 142, 163, 132 S.Ct. 2156, 183 L.Ed.2d 153 (2012). Thus, the term "malfeasance" should be read broadly.
Under a broad reading of "malfeasance," a state would not be able to pass any law and claim that violating the law constitutes an act of malfeasance. Rather, the state law must "serve[ ] some Medicaid-related goals." Pharm. Research & Mfrs. of Am. v. Walsh , 538 U.S. 644, 663, 123 S.Ct. 1855, 155 L.Ed.2d 889 (2003) (plurality op.). For this reason, § 1396a(p)(1) authorizes states to enact laws against wrongful conduct affecting Medicaid-related goals. And states may then enact a law, as Kansas did, which excludes a provider for violating these laws.
Under this definition, a state would enjoy broad authority, but this authority would not go unchecked. For example, a state could not circumvent Medicaid's purpose by enacting laws to undermine or bypass the Medicaid provisions. Here the Jane Doe plaintiffs have not alleged that Kansas's laws were designed to undermine or bypass Medicaid.
But let's assume for the sake of argument that the majority's narrow definition of "malfeasance" is right. Under this approach, § 1396a(p)(1) allows states to exclude providers for violating state laws that prohibit conduct "analogous" to conduct excludable under the three statutes listed in § 1396a(p)(1). Majority Op. at 1230-31. Even under the majority's approach, Kansas's termination of PPKM would constitute action authorized by § 1396a(p)(1).
Kansas's termination of PPKM was based on Kansas Administrative Regulation § 28-29-16(a)(1). That provision states:
The [Kansas Secretary of Health and Environment] or any duly authorized representative of the secretary, at any reasonable hour of the day, having identified themselves and giving notice of their purpose, may ... [e]nter ... any environment where solid wastes are generated, stored, handled, processed, or disposed, and inspect the premises and gather information of existing conditions and procedures....
Kan. Admin. Regs. § 28-29-16(a)(1). This provision is analogous to the federal statute, 42 U.S.C. § 1320a-7(b)(12)(C),[12] which *1246 is identified in § 1396a(p)(1) as a basis to terminate a provider. See 42 U.S.C. § 1396a(p)(1). The federal statute, 42 U.S.C. § 1320a-7(b)(12)(C), allows for the termination of
[a]ny individual or entity that fails to grant immediate access, upon reasonable request (as defined by the [HHS] Secretary in regulations) to any of the following: .... To the Inspector General of [HHS], for the purpose of reviewing records, documents, and other data necessary to the performance of the statutory functions of the Inspector General.
42 U.S.C. § 1320a-7(b)(12)(C). The question here is whether § 1320a-7(b)(12)(C) and Kansas Administrative Regulation § 28-29-16(a)(1) are analogous. The two can be analogous if they bear similarities even though some differences exist. See American Heritage College Dictionary 48 (3d ed. 1997) (defining an "analogy" as "[s]imilarity in some respects between things that are otherwise dissimilar"). In addressing whether the provisions are analogous, we are trying to determine whether the state law prohibits the same type of "malfeasance" covered in the statutes listed in § 1396a(p)(1). See Planned Parenthood Ariz. Inc. v. Betlach , 727 F.3d 960, 972 (9th Cir. 2013). Thus, we must focus on the conduct covered by Kansas Administrative Regulation § 28-29-16(a)(1) and determine whether this conduct bears similarities to the conduct addressed in § 1320a-7(b)(12)(C).
The conduct being prohibited is similar in the two provisions. For example, both provisions require certain entities to provide access to government officials so that they can inspect the premises. A provider violates both provisions by refusing to allow access to government inspectors, rendering the prohibited conduct analogous. In light of these similarities, 42 U.S.C. § 1396a(p)(1) authorized Kansas to terminate providers from Medicaid based on a violation of the state law requiring access for a governmental inspection.
2. The Jane Doe Plaintiffs' Cause of Action
The resulting issue is whether the free-choice-of-provider clause allowed the Jane Doe plaintiffs to challenge Kansas's application of § 1396a(p)(1). The answer is (at best) ambiguous, which is fatal to the Jane Doe plaintiffs' claim.
The district court allowed the Jane Doe plaintiffs to invoke § 1983 to challenge Kansas's action as a violation of the free-choice-of-provider clause. The problem is that Kansas's action was of a type authorized by a separate Medicaid provision:
*1247 § 1396a(p)(1). The district court acknowledged this authorization, but feared that the inability to use § 1983 in these circumstances could allow states to evade judicial review of Medicaid-related decisions, rendering the free-choice-of-provider clause a hollow right. See Planned Parenthood of Kan. & Mid-Mo. v. Mosier , No. 16-2284-JAR-GLR, 2016 WL 3597457, at *17 (D. Kan. July 5, 2016).
This fear does not permit us to broaden § 1983 to allow a private right of action to challenge administrative action taken under § 1396a(p)(1), for it is not our function as judges to create a cause of action to enforce a statute that does not confer an unambiguous federal right. Gonzaga Univ. v. Doe , 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).
Until today, no majority opinion of another circuit court has addressed this issue in a holding: The issue did not arise in Planned Parenthood of Indiana or in Planned Parenthood Arizona , as the states' actions there were not of a type authorized by a Medicaid provision. Rather, the states in Planned Parenthood of Indiana and Planned Parenthood Arizona had tried to preemptively exclude-as a class-any provider that performed abortion services. Planned Parenthood Ariz. Inc. v. Betlach , 727 F.3d 960, 962 (9th Cir. 2013) ; Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dept. of Health , 699 F.3d 962, 967 (7th Cir. 2012). Section 1396a(p)(1) was relevant only because the states had argued that § 1396a(p)(1) provided unchecked authority to terminate providers. That argument has been soundly rejected. See Planned Parenthood Ariz. , 727 F.3d at 971-72 ; Planned Parenthood of Ind. , 699 F.3d at 979-80.
Unlike in those cases, Kansas argues that its actions under Kansas Administrative Regulation § 28-29-16(a)(1) were justified under the provisions listed in § 1396a(p)(1). That difference matters, as the Ninth Circuit explained in Planned Parenthood Arizona :
[ Section 1396a(p)(1) ] do[es] not apply here. [Arizona's abortion law] does not set out grounds for excluding individual providers from Arizona's Medicaid program demonstrated to have engaged in some type of criminal, fraudulent, abusive, or otherwise improper behavior. Rather, it preemptively bars a class of providers on the ground that their scope of practice includes certain perfectly legal medical procedures.
Planned Parenthood Ariz. , 727 F.3d at 973 (emphases in original).[13] Kansas is doing here what the state had declined to do in Planned Parenthood Arizona .
The Fifth Circuit in Planned Parenthood of Gulf Coast did address the issue. But the court there did so only in dicta, as the state had not argued that its actions were analogous to any of the provisions listed in § 1396a(p)(1). See Planned Parenthood of Gulf Coast, Inc. v. Gee , 862 F.3d 445, 466 (5th Cir. 2017) ("[The State agency does not] even assert that its grounds for termination are consistent or analogous with 42 U.S.C. § 1396a(p)(1)'s enumerated grounds for exclusion."). But see id. at 478-79 (Owen, J., dissenting) (concluding that the state had justified its actions under § 1396a(p)(1), which should have prevented the majority from reaching the merits). In dicta, the court discussed the bounds of the right under the free-choice-of-provider clause:
[T]he free-choice-of-provider [clause] gives individuals the right to demand care from a qualified provider when access to that provider is foreclosed by *1248 reasons unrelated to that provider's qualifications. Otherwise, any right to which the [plaintiffs] are entitled to under [the free-choice-of-provider clause] would be hollow.
Id. at 462 (majority op.) (emphasis in original) (citing Planned Parenthood Se., Inc. v. Bentley , 141 F.Supp.3d 1207, 1218 (M.D. Ala. 2015) ).
The Fifth Circuit feared that limiting the plaintiffs' cause of action would render the free-choice-of-provider clause "hollow," relying on Planned Parenthood Southeast, Inc. v. Bentley , a district court case. 141 F.Supp.3d at 1217-18. In Planned Parenthood Southeast , the district court squarely considered the present issue. Id. The court acknowledged that there "plainly are some reasons that a State may terminate a provider ... other than the provider being unqualified." Id. at 1218. But the district court concluded-without any pertinent citation-that the free-choice-of-provider clause must allow plaintiffs to challenge those reasons or result in "evisceration" of the clause. Id. This reasoning is unconvincing for two reasons.
First, even with the absence of a private right of action to litigate the application of state laws authorized by § 1396a(p)(1), plaintiffs could still challenge a state Medicaid program that expressly limited the choice of qualified providers without any separate statutory authority. E.g. , Planned Parenthood Ariz. , 727 F.3d at 964 (state program excluded all abortion providers from Medicaid); Planned Parenthood of Ind. , 699 F.3d at 967 (same); Harris , 442 F.3d at 460 (state program limited the sale of incontinence products to a single provider). Thus, even if the Jane Doe plaintiffs were forbidden from bringing the present suit, their right under the free-choice-of-provider clause would not be a hollow one.
Second, even if the inability to invoke § 1983 would render the free-choice-of-provider clause "a hollow right," this problem would be for Congress to fix. See Touche Ross & Co. v. Redington , 442 U.S. 560, 579, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) ("[Plaintiffs] contend that the result we reach sanctions injustice. But even if that were the case, the argument is made in the wrong forum, for we are not at liberty to legislate."). Our job is only to determine whether Congress has "manifest[ed] an 'unambiguous[ ]' intent to confer individual rights." Gonzaga Univ. v. Doe , 536 U.S. 273, 280, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) (first alteration in original) (quoting Pennhurst State Sch. & Hosp. v. Halderman , 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) ). "[W]hat matters is the law the Legislature did enact," not what we think the law should have said. Shady Grove Orthopedic Assocs. v. Allstate Ins. Co. , 559 U.S. 393, 403, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010) (emphasis in original).
The resulting issue is whether the free-choice-of-provider clause unambiguously provided the Jane Doe plaintiffs with a right to have states properly apply their laws (authorized by § 1396a(p)(1) ) to Medicaid providers. Or, instead, has Congress simply conferred the Jane Doe plaintiffs with a right to be covered under a program (like Kansas's) that does not contain unauthorized exclusionary provisions? Though Congress has arguably created an individual right under the free-choice-of-provider clause, the scope of that right remains ambiguous when the state terminates a provider under § 1396a(p)(1).
* * *
In district court, the plaintiffs did not demonstrate the presence of a federal right that is actionable under § 1983. The text of the free-choice-of-provider clause directs states to create Medicaid programs that do not limit access to qualified providers without separate statutory authorization.
*1249 To claim an enforceable right to obtain medical care from any provider, it is not enough to show that Congress generally intended for the free-choice-of-provider clause to protect the Jane Doe plaintiffs' choice of providers. See Gonzaga , 536 U.S. at 283, 122 S.Ct. 2268 ; see also Planned Parenthood of Gulf Coast , 862 F.3d at 474 (Owen, J., dissenting) ("[The free-choice-of-provider clause] does not give a patient the right to contest a State's determination that a provider ... has not otherwise met state or federal statutory requirements."). Instead, the Jane Doe plaintiffs could succeed on the merits only if Congress had unambiguously extended the right under the free-choice-of-provider clause to allow challenges to a state's application of its laws adopted under § 1396a(p)(1). See Gonzaga , 536 U.S. at 283, 122 S.Ct. 2268. In my view, the applicability of this right is, at best, ambiguous.
The ambiguity prevents an applicable right, which in turn prevents the Jane Doe plaintiffs from establishing likelihood of success in their challenge to PPKM's termination. And the inability to establish likelihood of success prevents a preliminary injunction. Diné Citizens Against Ruining our Env't v. Jewell , 839 F.3d 1276, 1281 (10th Cir. 2016).
III. Conclusion
In my view, the free-choice-of-provider clause does not unambiguously provide the Jane Doe plaintiffs with a right to challenge Kansas's application of § 1396a(p)(1). Therefore, the Jane Doe plaintiffs lacked an enforceable right to challenge Kansas's action. The lack of an enforceable right should have precluded the award of a preliminary injunction to the Jane Doe plaintiffs.
For these reasons, I would reverse the grant of a preliminary injunction to the Jane Doe plaintiffs as to both PPSLR and PPKM. The majority reverses the grant of a preliminary injunction as to PPSLR but affirms the grant of a preliminary injunction as to PPKM. Therefore, I join the majority as to PPSLR and respectfully dissent as to PPKM.

These affiliates are medical providers offering family planning health services to Kansas Medicaid patients. After this suit began, PPKM merged with another Planned Parenthood affiliate (Planned Parenthood of Central Oklahoma) and changed the name to "Planned Parenthood Great Plains."

I focus on PPKM's alleged refusal to allow the inspectors to photograph waste-disposal areas. But Kansas also alleged that PPKM and PPSLR had withheld vendor lists, allowed the illegal sale of fetal organs, and engaged in fraudulent billing practices. Consideration of these allegations is unnecessary for us to reverse.

The plaintiffs also based their motion for a preliminary injunction on a claim involving denial of equal protection. But the district court did not rely on this claim. Nor does the majority.

Reasoning that the Jane Doe plaintiffs had a cause of action, the district court declined to decide whether PPKM and PPSLR could bring the suit on their own. 2016 WL 3597457, at *17. The majority takes the same approach, as do I.

The other factors are
• whether the plaintiffs would suffer irreparable harm without a preliminary injunction,
• whether the threatened harm outweighs the harm to the adversary from a preliminary injunction, and
• whether the preliminary injunction would harm the public interest.
Diné Citizens Against Ruining Our Env't , 839 F.3d at 1281.

Kansas also defends its findings that PPKM had violated state law and argues that the Jane Doe plaintiffs had not faced irreparable harm.

In some of the cases invoked by PPKM, the state Medicaid programs contained exclusions unauthorized by Medicaid or any other federal law. See, e.g. , Planned Parenthood Ariz. Inc. v. Betlach , 727 F.3d 960, 962-63 (9th Cir. 2013) (state law that excluded all abortion providers from Medicaid was not authorized by § 1396a(p)(1) or other federal law); Planned Parenthood of Ind. v. Comm'r of the Ind. State Dep't of Health , 699 F.3d 962, 979-80 (7th Cir. 2012) (same).

In Harris v. James , Medicaid recipients sued under § 1983, alleging that the state's Medicaid program failed to provide transportation to and from providers. 127 F.3d 993, 995 (11th Cir. 1997). The Medicaid recipients relied in part on the free-choice-of-provider clause. Id. at 1011. The Eleventh Circuit assumed, for the sake of argument, that the free-choice-of-provider clause provided an individually enforceable right. Id. at 1011 & n.27. But the court concluded that this potential right would not have unambiguously included transportation to and from providers:
In other words, we do not think that transportation to and from providers is reasonably understood to be part of the content of a right to ... choice among providers. Instead, if the regulation [invoked by the Medicaid recipients] is a valid interpretation of [Medicaid provisions including the free-choice-of-provider clause], it would be because transportation may be a reasonable means of ensuring the prompt provision of ... choice among providers. Such links to Congressional intent may be sufficient to support the validity of a regulation; however, we think they are too tenuous to support a conclusion that Congress has unambiguously conferred upon Medicaid recipients a federal right to transportation enforceable under § 1983.
Id. at 1011-12 (emphasis in original).

Planned Parenthood of Gulf Coast, Inc. v. Gee , 862 F.3d 445, 460-61 (5th Cir. 2017) ; Planned Parenthood Ariz. Inc. v. Betlach , 727 F.3d 960, 966-67 (9th Cir. 2013) ; Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health , 699 F.3d 962, 974-75 (7th Cir. 2012) ; Harris v. Olszewski , 442 F.3d 456, 461-62 (6th Cir. 2006).

Does v. Gillespie , 867 F.3d 1034, 1042-43 (8th Cir. 2017).

Of the situations listed in those three statutes, we are concerned only with exclusionary powers that are optional for the HHS Secretary. See 42 U.S.C. § 1396a(p)(1) (stating "reason[s] for which the Secretary could exclude" a provider from participation). The three statutes also include exclusionary provisions that are mandatory. A separate section requires that states exclude providers under these mandatory provisions. See 42 U.S.C. § 1396a(a)(39).

Kansas has argued that it could exclude PPKM under Kansas Administrative Regulation § 28-29-16(a)(1) because it had been enacted under § 1396a(p)(1). Appellant's Opening Br. at 48 (quoting Planned Parenthood Ariz. Inc. v. Betlach , 727 F.3d 960, 972 (9th Cir. 2013) ). In making this argument, Kansas did not specifically point to 42 U.S.C. § 1320a-7(b)(12)(C). Instead, Kansas relied on 42 U.S.C. § 1320a-7(b)(12)(B). But to address Kansas's interpretation of § 1396a(p)(1), we must address the Medicaid statute as a whole. See Samantar v. Yousuf , 560 U.S. 305, 319, 130 S.Ct. 2278, 176 L.Ed.2d 1047 (2010) ("In sum, '[w]e do not ... construe statutory phrases in isolation; we read statutes as a whole.' " (quoting United States v. Morton , 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984) ) (alteration and omission in original) ); Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson , 559 U.S. 280, 290, 130 S.Ct. 1396, 176 L.Ed.2d 225 (2010) ("Courts have a 'duty to construe statutes, not isolated provisions.' " (quoting Gustafson v. Alloyd Co. , 513 U.S. 561, 568, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) ) ). In construing the statute as a whole, we are not restricted to the sections cited by the parties. See United States v. Vallery , 437 F.3d 626, 632-33 (7th Cir. 2006) (considering parts of a statute not relied upon by either side because of the court's obligation to take into account the meaning of the statute as a whole); see also WWC Holding Co. v. Sopkin , 488 F.3d 1262, 1276 n.10 (10th Cir. 2007) (stating that the court can interpret a statute differently than both parties because we engage in de novo review when interpreting statutes).

Similarly, in Harris v. Olszewski , the Sixth Circuit did not consider our issue involving the interplay between the free-choice-of-provider clause and § 1396a(p)(1). See generally Harris v. Olszewski , 442 F.3d 456 (6th Cir. 2006).