Certiorari granted by Supreme Court, June 20, 2023
Vacated and remanded by Supreme Court, June 20, 2023

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――――

**No. 21-1043**

―――――――――――

PLANNED PARENTHOOD SOUTH ATLANTIC; JULIE EDWARDS, on her behalf and on behalf of all others similarly situated,

       Plaintiffs – Appellees,

v.

ROBERT M. KERR, in his official capacity as Director, South Carolina Department of Health and Human Services,

       Defendant – Appellant.

------------------------------

REPRODUCTIVE RIGHTS AND JUSTICE ORGANIZATIONS AND ALLIED ORGANIZATIONS; NATIONAL HEALTH LAW PROGRAM; SOUTH CAROLINA APPLESEED LEGAL JUSTICE CENTER; VIRGINIA POVERTY LAW CENTER; NORTH CAROLINA JUSTICE CENTER; CHARLOTTE CENTER FOR LEGAL ADVOCACY; IPAS; SEXUALITY INFORMATION AND EDUCATION COUNCIL OF THE UNITED STATES; AMERICAN ACADEMY OF FAMILY PHYSICIANS; AMERICAN ACADEMY OF PEDIATRICS; AMERICAN COLLEGE OF NURSE-MIDWIVES; AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS; AMERICAN COLLEGE OF PHYSICIANS; AMERICAN MEDICAL ASSOCIATION; AMERICAN PSYCHIATRIC ASSOCIATION; NURSE PRACTITIONERS IN WOMENS HEALTH; SOCIETY FOR MATERNAL-FETAL MEDICINE; SOCIETY OF GYNECOLOGIC ONCOLOGY; SOCIETY OF OB/GYN HOSPITALISTS,

       Amici Supporting Appellee.

―――――――――――

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Mary G. Lewis, District Judge.  (3:18-cv-02078-MGL)

---

Argued:  January 26, 2022                                          Decided:  March 8, 2022

---

Before WILKINSON, WYNN, and RICHARDSON, Circuit Judges.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Wynn joined. Judge Richardson wrote an opinion concurring in the judgment.

---

**ARGUED:**  John J. Bursch, ALLIANCE DEFENDING FREEDOM, Washington, D.C., for Appellant.  Nicole A. Saharsky, MAYER BROWN, LLP, Washington, D.C., for Appellees.  **ON BRIEF:**  Kelly M. Jolley, Ariail B. Kirk, JOLLEY LAW GROUP, LLC, Columbia, South Carolina, for Appellant.  Avi M. Kupfer, MAYER BROWN LLP, Chicago, Illinois; Alice Clapman, PLANNED PARENTHOOD FEDERATION OF AMERICA, Washington, D.C.; M. Malissa Burnette, Kathleen McDaniel, BURNETTE, SHUTT & MCDANIEL, PA, Columbia, South Carolina, for Appellees.  Julie Rikelman, Pilar Herrero, Joel Dodge, CENTER FOR REPRODUCTIVE RIGHTS, New York, New York; Da Hae Kim, NATIONAL ASIAN PACIFIC AMERICAN WOMEN'S FORUM, Washington, D.C., for Amici Reproductive Rights and Justice Organizations and Allied Organizations.  Martha Jane Perkins, Catherine McKee, Sarah Jane Somers, Sarah Grusin, NATIONAL HEALTH LAW PROGRAM, Chapel Hill, North Carolina, for Amici The National Health Law Program, South Carolina Appleseed Legal Justice Center, Virginia Poverty Law Center, North Carolina Justice Center, Charlotte Center for Legal Advocacy, IPAS, and Sexuality Information and Education Council of the United States.  Janice M. Mac Avoy, Alexis R. Casamassima, Danielle M. Stefanucci, FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP, New York, New York, for Amici American Academy of Family Physicians, American Academy of Pediatrics, American College of Nurse-Midwives, American College of Obstetricians and Gynecologists, American College of Physicians, American Medical Association, American Psychiatric Association, Nurse Practitioners in Women's Health, Society for Maternal-Fetal Medicine, Society of Gynecologic Oncology, and Society of OB/GYN Hospitalists.

---

WILKINSON, Circuit Judge:

This case arises out of South Carolina's termination of Planned Parenthood South Atlantic's Medicaid provider agreement, an action that South Carolina took because Planned Parenthood offers abortion services. But this case is not about abortion. It is about Congress's desire that Medicaid recipients have their choice of qualified Medicaid providers. Here South Carolina terminated Planned Parenthood's agreement notwithstanding the fact that all parties agree that Planned Parenthood is perfectly competent to provide the non-abortive healthcare the individual plaintiff sought and requested. To allow the State to disqualify Planned Parenthood would nullify Congress's manifest intent to provide our less fortunate citizens the opportunity to select a medical provider of their choice, an opportunity that the most fortunate routinely enjoy.

At the outset of this litigation, the district court issued a preliminary injunction preventing South Carolina from terminating Planned Parenthood's provider agreement. We affirmed its decision then. South Carolina now returns to our court to appeal the district court's subsequent permanent injunction. For the following reasons, we again affirm the district court's judgment.

I.

A.

Congress created Medicaid in 1965 to provide "federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U.S. 297, 301 (1980). The program furnishes "medical assistance on behalf of

3

families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1. In this way, Medicaid effectively serves as a nationwide system of public health insurance for those who cannot afford medical care on their own.

Although it is federal in scope, Medicaid is administered by the states and, "[l]ike other Spending Clause legislation, Medicaid offers the States a bargain: Congress provides federal funds in exchange for the States' agreement to spend them in accordance with congressionally imposed conditions." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 323 (2015). The scheme of the Medicaid program reflects the cooperative nature of this enterprise. Under the Medicaid Act, the federal government is tasked with crafting general eligibility requirements and standards. *See* 42 U.S.C. § 1396 *et seq.* States then submit Medicaid plans for approval by the Secretary of Health and Human Services, who reviews these plans to ensure that they comply with the statutory and regulatory requirements governing Medicaid. *See Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 610 (2012). Upon approval, states receive federal matching funds that they may use to reimburse providers. *See id.* at 611. On the other hand, the Secretary may withhold funds if he finds "that in the administration of the plan there is a failure to comply substantially" with the requirements of the Medicaid Act. 42 U.S.C. § 1396c.

Over the first two years of the Medicaid program, Congress grew concerned that states might deny recipients the opportunity to choose the provider of their choice. In Puerto Rico, for instance, indigent patients could receive medical services "only in Commonwealth facilities." *President's Proposals for Revision in the Social Security*

4

*System: Hearing on H.R. 5710 before the H. Comm. on Ways & Means, Part 4*, 90th Cong. 2273 (1967). And in Massachusetts, private physicians at teaching hospitals were not reimbursed under Medicaid. *Id.* at 2301.

Accordingly, Congress amended the Medicaid Act to include the free-choice-of-provider provision, which is at issue here. That provision states:

> A State plan for medical assistance must . . . provide that . . . any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services. . . .

42 U.S.C. § 1396a(a)(23).

### B.

Planned Parenthood South Atlantic offers patients a number of family planning and reproductive health services at two South Carolina health centers in Charleston and Columbia. These services include, for instance, contraception and contraceptive counseling, cancer screenings, screenings and treatment for sexually transmitted infections, pregnancy testing, and physical exams. Planned Parenthood also performs abortions, although South Carolina Medicaid only covers abortions in certain rare circumstances required by federal law, such as rape, incest, or the need to protect the mother's life. *See* Consolidated Appropriations Act, 2021, Pub. L. No. 116–260, div. H, tit. V, §§ 506–07, 134 Stat. 1182, 1622 (Hyde Amendment).

Julie Edwards, the individual plaintiff in this case, is insured through Medicaid and suffers from Type 1 diabetes, for which she has obtained frequent medical attention. She has been advised by doctors that, due to high blood pressure and high blood sugar, it would

5

be dangerous for her to try to carry a pregnancy to term. After finding that local Medicaid providers were unable or unwilling to provide her with the contraceptive care that she sought, Edwards made an appointment at Planned Parenthood's office in Columbia. Doctors there inserted an intrauterine device to prevent pregnancy and told her that her blood pressure was very high, for which she sought follow-up care. Edwards was impressed with her visit and planned to shift "all [her] gynecological and reproductive health care there," including her "annual well woman exam." J.A. 61. However, she stated that she "[would] not be able to continue going there if the services are not covered" by Medicaid and she is required "to pay out of pocket." J.A. 61.

In July 2018, the Governor of South Carolina issued an executive order directing South Carolina's Department of Health and Human Services (DHHS) "to deem abortion clinics . . . that are enrolled in the Medicaid program as unqualified to provide family planning services and, therefore, to immediately terminate them upon due notice and deny any future such provider enrollment applications for the same." J.A. 54. The Governor stated that the purpose of this decision was to prevent South Carolina from indirectly subsidizing the practice of abortion. On that same day, DHHS sent Planned Parenthood a letter stating that it was "no longer . . . qualified to provide services to Medicaid beneficiaries" and that its "enrollment agreements with the South Carolina Medicaid programs [were] terminated" effective immediately. J.A. 56.

Two weeks later, Planned Parenthood and Edwards filed suit under 42 U.S.C. § 1983 against the Director of DHHS in federal district court, alleging that South Carolina had violated the Medicaid Act and the Fourteenth Amendment. The plaintiffs soon moved

6

for a preliminary injunction and a temporary restraining order, contending that they were likely to succeed on their claim that South Carolina's termination of Planned Parenthood's Medicaid provider agreement violated the Medicaid Act's free-choice-of-provider provision. South Carolina opposed this motion, arguing that the plaintiffs lacked a cause of action under § 1983 to sue to enforce that provision.

The district court granted the preliminary injunction, concluding that Edwards had demonstrated that she was likely to succeed on her Medicaid Act claim since the free-choice-of-provider provision conferred a private right enforceable under § 1983 and since South Carolina had violated that provision by terminating Planned Parenthood's Medicaid provider agreement. *See Planned Parenthood S. Atl. v. Baker*, 326 F. Supp. 3d 39, 44–48 (D.S.C. 2018). The district court concluded that the other equitable factors also favored Edwards and it enjoined South Carolina from terminating Planned Parenthood's provider agreement during the pendency of the litigation. *See id.* at 48–50. Because it held that preliminary relief was warranted on the basis of Edwards's Medicaid Act claim, it declined to consider whether such relief would also be appropriate on the basis of Planned Parenthood's claim. *See id.* at 50.

South Carolina appealed and this panel affirmed. *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 691 (4th Cir. 2019). After applying the three factors articulated by the Supreme Court in *Blessing v. Firestone*, 520 U.S. 329 (1997), we first concluded that the free-choice-of-provider provision conferred on Edwards a private right enforceable under § 1983. *See Baker*, 941 F.3d at 696–98. We noted that the statute was couched in terms of individual beneficiaries and that it used the phrase "any individual," indicating

7

Congress's specific intention to confer a right on the class of Medicaid recipients. *Id.* at 697. In addition, the statute was not so "vague and amorphous" as to strain judicial competence and the text clearly imposed a "binding obligation on the States." *Id.* (quoting *Blessing*, 520 U.S. at 340–41). Since the enforcement scheme did not indicate that Congress had foreclosed a remedy under § 1983, we concluded that Edwards could sue under that statute to enforce the free-choice-of-provider provision. *See id.* at 698–700.

Next, we determined that a provider was "qualified to perform the service or services required" under the terms of the statute, 42 U.S.C. § 1396a(a)(23), if it was professionally competent to do so, although states retained discretionary authority to disqualify providers as professionally incompetent. *See id.* at 701–06. Since South Carolina's exclusion of Planned Parenthood had "nothing to do with professional misconduct" or with Planned Parenthood's "ability to safely and professionally perform plaintiff's required family-planning services," we agreed with the district court that Edwards had demonstrated a substantial likelihood of success on her Medicaid Act claim. *Id.* at 705. Likewise, we concluded that the district court had not abused its discretion in determining that the remaining equitable factors favored Edwards and we affirmed its judgment. *See id.* at 706–07.

Following our decision, South Carolina petitioned for a writ of certiorari, which the Supreme Court denied. *Baker v. Planned Parenthood S. Atl.*, 141 S. Ct. 550 (2020). The district court subsequently granted summary judgment to the plaintiffs on Edwards's Medicaid Act claim, noting that, under this panel's previous decision, "Edwards, as a matter of law, may seek to enforce the free-choice-of-provider provision in this § 1983

8

action" and that it was "required to follow Fourth Circuit precedent" on this question. *Planned Parenthood S. Atl. v. Baker*, 487 F. Supp. 3d 443, 446, 448 (D.S.C. 2020). Since it concluded that South Carolina had violated this provision, the district court entered summary judgment for the plaintiffs. *See id.* The parties stipulated to a dismissal of their remaining Fourteenth Amendment claims, following which the district court entered a declaratory judgment in favor of the plaintiffs and "permanently enjoined" South Carolina "from terminating or excluding [Planned Parenthood] from participation in the South Carolina Medicaid Program on the grounds it is an abortion clinic or provides abortion services." J.A. 302–03. South Carolina now appeals.

## II.

Before we turn to the merits of South Carolina's appeal, however, we must satisfy ourselves that we have jurisdiction. South Carolina contends for the first time on this appeal that it believes this case is moot. We do not share that view.

Under Article III of the Constitution, our jurisdiction is limited to "the adjudication of actual cases and controversies." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). This requirement "extends throughout the pendency of the action," *id.*, and "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *Powell v. McCormack*, 395 U.S. 486, 496 (1969). As such, mootness is closely related to standing and we have made clear that "a case is moot if, at any point prior to the case's disposition, one of the elements essential to standing, like

9

injury-in-fact, no longer obtains." *Am. Fed'n of Gov't Emps. v. Office of Special Counsel*, 1 F.4th 180, 187 (4th Cir. 2021).

To establish standing, the plaintiff must allege an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). In its reply brief, South Carolina alleges for the first time that Edwards no longer satisfies these requirements, on the grounds that she has not used Planned Parenthood's services since filing her complaint and therefore faces no concrete injury if South Carolina terminates Planned Parenthood's Medicaid provider agreement. Although this contention is offered late in the day, we are bound to consider it fully.

Upon doing so, however, we are satisfied that Edwards's claims are not moot. It is uncontested that Edwards is insured through Medicaid and that she has previously relied on Planned Parenthood for gynecological and reproductive healthcare. In addition, Edwards asserts in a supplemental declaration that she has seen no other providers for such care since her appointment with Planned Parenthood in 2018. In this declaration, executed in July of last year, Edwards states that she in fact had made an appointment for future care with Planned Parenthood before learning of South Carolina's mootness argument. If Planned Parenthood is not able to provide this care under Medicaid, Edwards will be forced to look elsewhere and she will experience a concrete, particularized injury.

South Carolina has not undermined Edwards's declaration or the contents thereof; instead, it suggests that her stated intentions to seek care from Planned Parenthood are insufficient to establish a concrete or imminent injury for Article III purposes. But a future

10

injury satisfies Article III as long as "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Here there is a substantial risk that Edwards will be harmed, given that she has previously used Planned Parenthood for gynecological and reproductive care, has seen no other providers for this care since, and has made a future appointment to receive this care from Planned Parenthood. And while Edwards may not have visited Planned Parenthood as regularly as she predicted in her complaint, the frequency of medical appointments may not be so perfectly predicted in advance. It is commonplace for patients to see multiple providers and equally routine to defer care until the need arises or until symptoms in some way manifest themselves. We are given no reason to doubt Edwards's contention that she intends Planned Parenthood to be her medical provider for certain forms of healthcare. The fact that she did not require such care in the time between the outset of this litigation and the present may simply reflect the happenstance of medical need, coupled with the unique hindrances of the covid pandemic.

We note that our conclusion here is a narrow one, drawn from the particular facts of Edwards's situation. And we are fully mindful of the Supreme Court's admonition that "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). Here, however, Edwards has made just the "concrete plans" that *Lujan* requires. And while the plaintiffs in *Lujan* asserted injury on the basis of abstract and indefinite

11

intentions to visit certain countries, *see id.*, it is far more likely that Edwards will fulfill her stated intention to seek gynecological or reproductive care from Planned Parenthood in the future, given the fact that Planned Parenthood's proximity and match with her medical needs led her to seek its services in the past. Under the particular circumstances present here, we conclude this case presents a live case or controversy. To hold otherwise would be to deprive Edwards both of the access to court which is her due and of the access to her chosen qualified medical provider.

## III.

On the merits, South Carolina argues that we should reconsider our previous panel decision and hold that Edwards cannot sue under § 1983 to enforce the free-choice-of-provider provision.[1] In essence, South Carolina suggests that we reverse the district court for applying a legal conclusion that we previously set forth in a binding opinion. This is a striking request, and one that cannot be reconciled with the nature of precedent in our judicial system. In any event, we remain persuaded that our previous holding is correct and we take this opportunity to reaffirm our prior decision.

## A.

In asking us to reconsider our previous decision, South Carolina would deny it any precedential weight. The State's position here is quite misguided. While law is indeed not

---

[1] Notably, South Carolina does not challenge the district court's determination (and our own previous conclusion) that South Carolina violated this provision by terminating Planned Parenthood's Medicaid provider agreement.

12

static, it is also not open to reversal in the manner that appellant suggests. After all, the question at issue here is identical to the legal question we resolved in the prior case: whether § 1983 provides a cause of action to enforce the Medicaid Act's free-choice-of-provider provision. We answered that question as a legal matter after full briefing and oral argument, and we presented our conclusion in a published opinion. Such a decision "is binding on other panels unless it is overruled by a subsequent en banc opinion of the court or a superseding contrary decision of the Supreme Court." *United States v. Dodge*, 963 F.3d 379, 383 (4th Cir. 2020) (quoting *United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005)).

South Carolina points to no such en banc opinion or Supreme Court decision. Instead, the only intervening change highlighted by South Carolina is that the Fifth Circuit recently came to a different conclusion than our own. *See Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 353 (5th Cir. 2020) (en banc). Even setting aside the fact that we remain on the majority of a rather lopsided circuit split,[2] it is hard to see how that could justify our reconsideration of the case. If we were free to overturn our own prior position whenever another circuit took a different view, it would utterly destabilize the law of our circuit, placing it at the sufferance of any circuit court anywhere that took a contrary step—something that often

---

[2] *Compare Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1224 (10th Cir. 2018); *Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960, 965–66 (9th Cir. 2013); *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 968 (7th Cir. 2012); *Harris v. Olszewski*, 442 F.3d 456, 461 (6th Cir. 2006) (all finding a right of action under § 1983) *with Kauffman*, 981 F.3d at 353; *Does v. Gillespie*, 867 F.3d 1034, 1037 (8th Cir. 2017) (finding no right of action under § 1983).

happens between the courts of appeals. As useful as we may find decisions from the other circuits, they of course carry only persuasive weight in our own.

Against these pressing considerations, South Carolina suggests that the law-of-the-circuit framework is inapposite here. It contends instead that only law-of-the-case governs where a panel rehears a legal issue stemming from the same case as a prior opinion. But we need not dance on the head of a pin as to whether our previous decision implicates law-of-the-case or whether it's binding law-of-the-circuit. As between the two, South Carolina loses either way. Without exception, this court has understood that the resolution of a purely legal issue, absent a change in controlling law, governs subsequent panels, including in later appeals following a prior interlocutory appeal. *L.J. v. Wilbon*, 633 F.3d 297, 308 (4th Cir. 2011); *U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 925 (4th Cir. 1995); *see also Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 560 n.5 (4th Cir. 2017) (noting that a previous opinion by an identical panel in the same case constituted both "law of the case" and "Fourth Circuit precedent"). We are hardly alone in this understanding. *See Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015) (collecting cases from the other courts of appeals).

"What has once been settled by a precedent will not be unsettled overnight, for certainty and uniformity are gains not lightly to be sacrificed." Benjamin N. Cardozo, *The Paradoxes of Legal Science* 29–30 (1928). Justice Cardozo's predecessor on the Supreme Court was of the same mind and once commented, in response to an article criticizing the common law: "We must add that we sincerely hope that the editors will fail in their expressed desire to diminish the weight of precedents with our courts. We believe the

14

weight attached to them is about the best thing in our whole system of law." Oliver Wendell Holmes Jr., *Summary of Events*, 7 Am. L. Rev. 579, 579 (1873). We agree with our forebears. Our fidelity to our previous decisions is a necessary service to the parties before us, as well as to the public generally. It ensures stability in the law and provides clear signals to litigants so that they may rely on our decisions. The alternative is a legal system where each thing is up for grabs every time. The very guidance that law purports to provide for human conduct would by degrees recede. So even assuming, purely arguendo, that we were free to reexamine our precedents, we would not do so here. Our previous decision was handed down as a matter of law and resolved the precise legal issue upon which South Carolina now seeks review. For the above multiplicity of reasons we stand by it. In Latin: *stare decisis*.

B.

Furthermore, we take this occasion to reaffirm our prior holding. To reiterate, the legal question is whether individuals such as Edwards may sue under 42 U.S.C. § 1983 to enforce the Medicaid Act's free-choice-of-provider provision. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. The Supreme Court has interpreted the phrase "and laws" to provide a cause of action for individuals who are deprived of a right, privilege, or immunity secured by federal statute. *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). As the Supreme Court has

15

cautioned, however, a litigant seeking to assert a cause of action under § 1983 "must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing*, 520 U.S. at 340.

As we explained in our previous opinion, rights of action brought under § 1983 are different from private rights of action inferred directly from a statute. *See Baker*, 941 F.3d at 694–95. The Supreme Court has warned against readily finding statutory rights of action under § 1983. It is not enough for a plaintiff to fall "within the general zone of interest" of a federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). Rather, nothing "short of an unambiguously conferred right," rather than the "broader or vaguer" notion of "'benefits' or 'interests'" may support a cause of action under § 1983. *Id.* This is particularly important in the Spending Clause context since such legislation is akin to a contract and "[t]he legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). But where it is clear and unambiguous that Congress intended to create a private right, we are obliged to follow its intention. As we noted, "[c]ourts cannot deprive the sovereign signatories to a 'contract' such as the Medicaid Act of the benefit of their bargain." *Baker*, 941 F.3d at 701.

### 1.

In *Blessing*, the Supreme Court articulated three factors to determine whether a statute creates a private right enforceable under § 1983:

First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory terms.

520 U.S. at 340–41 (citations omitted). If these three factors are satisfied, there is "a rebuttable presumption that the right is enforceable under § 1983," provided that Congress has not expressly or implicitly foreclosed a § 1983 remedy. *Id.* at 341.

To repeat, the free-choice-of-provider provision states that "[a] State plan for medical assistance *must* . . . provide that *any individual* eligible for medical assistance . . . *may obtain such assistance* from any institution . . . qualified to perform the service or services required." 42 U.S.C. § 1396a(a)(23) (emphases added). "It is difficult to imagine a clearer or more affirmative directive." *Baker*, 941 F.3d at 694. The statute plainly reflects Congress's desire that individual Medicaid recipients be free to obtain care from any qualified provider and it implements this policy in direct and unambiguous language. For this reason, all three of the *Blessing* factors are met.

As to the first factor, the free-choice-of-provider provision "unambiguously gives Medicaid-eligible patients an individual right" to their choice of qualified provider. *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 974 (7th Cir. 2012). The provision clearly and expressly identifies the intended beneficiaries: "any individual eligible for medical assistance" under Medicaid. 42 U.S.C. § 1396a(a)(23)(A). And as we noted, "Congress's use of the phrase 'any individual' is a prime example of the kind of 'rights-creating' language required to confer a personal right

17

on a discrete class of persons—here, Medicaid beneficiaries." *Baker*, 941 F.3d at 697. Indeed, this phrase closely mirrors the common example that the Supreme Court has given of such language. *See Gonzaga*, 536 U.S. at 287 ("No person . . . shall . . . be subjected to discrimination."). The statutory text therefore unmistakably evinces Congress's intention to confer on Medicaid beneficiaries a right to the free choice of their provider.

As to the second factor, the provision is hardly so "vague and amorphous" as to preclude judicial enforcement, *Blessing*, 520 U.S. at 340, since it merely requires courts to make two discrete assessments: (i) that the provider is "qualified to perform the service or services required" and (ii) that the provider "undertakes" to provide those services, 42 U.S.C. § 1396a(a)(23)(A). By way of comparison, the Supreme Court has concluded that a statute does not confer an enforceable right where it simply required a state to make "'reasonable efforts' to maintain an abused or neglected child in his home" without any "further statutory guidance." *Suter v. Artist M.*, 503 U.S. 347, 359–60 (1992). Here, by contrast, the statute does not require courts to "engage in any balancing of competing concerns or subjective policy judgments, but only to answer factual, yes-or-no questions: Was an individual denied the choice of a (1) qualified and (2) willing provider?" *Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960, 967 (9th Cir. 2013). Courts are routinely tasked with resolving questions just like these.

Indeed, the facts of this case make it particularly easy to apply the free-choice-of-provider provision. Planned Parenthood has provided the medical services that Edwards seeks for almost four decades, without any apparent challenge to its professional competence until now. We of course would give due respect and weight to South Carolina's

18

judgment that a particular provider is unqualified. But the language of the statute makes clear that the relevant qualifications are medical qualifications, and, as we noted in our prior decision, South Carolina "does not the contest the fact" that Planned Parenthood "is professionally qualified to deliver the services that the individual plaintiff seeks." *Baker*, 941 F.3d at 702. Given these facts, it is straightforward to apply the free-choice-of-provider provision here.

Finally, as to the third factor, the statute is couched in just the "mandatory, rather than precatory terms" that the Supreme Court has required, *Blessing*, 520 U.S. at 341, since states "must provide" a Medicaid recipient with her choice of qualified provider. Again, a comparison makes the point clear: the Supreme Court found that provisions "were intended to be hortatory, not mandatory" where they were expressed only as "findings respecting the rights of persons with developmental disabilities," such as that these persons have a right to "appropriate treatment." *Pennhurst*, 451 U.S. at 13, 24. Here, by contrast, the text clearly imposes a definite obligation on state governments; indeed, it is hard to imagine how Congress could have more plainly used mandatory language.

In short, if this statute does not survive the *Blessing* factors, we cannot imagine one that would. Congress used emphatic, mandatory language to affirm the right of Medicaid recipients to receive the healthcare of their choice from a willing provider, and there is nothing about this inquiry that would strain the judicial role. In every respect, the statute resembles those laws which the Supreme Court has determined confer enforceable rights and we do not see how we could hold otherwise without repudiating Congress's clear intention.

19

In fact, South Carolina does not dispute our analysis of the *Blessing* factors. Rather, it argues that we erred altogether in applying these factors and suggests that the Supreme Court's decision in *Gonzaga* effectively abrogated *Blessing*. But *Gonzaga* never indicated that *Blessing* is no longer good law; instead, it simply criticized courts that interpreted *Blessing* "as allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute is intended to protect." 536 U.S. at 282–83. Indeed, our court has held that the *Blessing* factors continue to govern following *Gonzaga. Doe v. Kidd*, 501 F.3d 348, 355 (4th Cir. 2007).

While South Carolina contends we disregarded *Gonzaga* in our prior decision, we in fact took pains to heed *Gonzaga*'s instruction that there must be an "unambiguously conferred right to support a cause of action brought under § 1983." *Gonzaga*, 536 U.S. at 283; *see Baker*, 941 F.3d at 695, 697, 700. As we stated, "courts are most definitely not at liberty to imply private rights of action willy-nilly." *Baker*, 941 F.3d at 700. But where Congress's intent to make a right enforceable under § 1983 is indeed "clear and unambiguous," *Gonzaga*, 536 U.S. at 290, we are bound to respect it. Because Congress's intent is clear and unambiguous here, we conclude that the free-choice-of-provider provision confers on Medicaid recipients an individual right.

2.

Since the *Blessing* factors are satisfied, the free-choice-of-provider provision may be enforced under § 1983 unless the Medicaid Act evinces Congress's intent to "specifically foreclose[] a remedy under § 1983." *Blessing*, 520 U.S. at 341 (quoting *Smith v. Robinson*, 468 U.S. 992, 1005 n.9 (1984)). "We do not lightly conclude that Congress

20

intended to preclude reliance on § 1983 as a remedy." *Smith*, 468 U.S. at 1012. And as we explained at length in our previous opinion, the statute here does no such thing. *See Baker*, 941 F.3d at 698–700.

The Medicaid Act provides three potential remedies in this context: the Secretary of Health & Human Services may take the drastic step of cutting off Medicaid funds, providers may follow state administrative processes to challenge termination decisions, or Medicaid recipients may use similar procedures to challenge claim denials. *See id.* at 698. None of these remedies provides individual Medicaid recipients any mechanism to contest the disqualification of their preferred provider, even though the statutory language benefits these individual recipients specifically and even though the Supreme Court has instructed us to focus on whether "an aggrieved individual lack[s] any federal review mechanism." *Gonzaga*, 536 U.S. at 290. And as we noted previously, *see Baker*, 941 F.3d at 698–99, the Supreme Court has already held in *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 (1990), that the Medicaid Act does not foreclose remedies under § 1983 for just these reasons, *see id.* at 521–23.

In response, South Carolina argues that we erroneously relied on *Wilder* and that this decision has been repudiated by the Supreme Court. This suggestion misreads both our previous decision and the Supreme Court's discussion of *Wilder*. To be sure, § 1983 does not operate as some sort of ubiquitous backstop conferring a private right of action where the underlying statute fails to do so. The Court has made clear that we should not rely on *Wilder*'s mode of analysis in determining whether a statute confers a private right enforceable under § 1983. *See Gonzaga*, 536 U.S. at 283 (rejecting the view "that our cases

21

permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983"); *Armstrong*, 575 U.S. at 330 n* (noting that "our later opinions plainly repudiate the ready implication of a § 1983 action that *Wilder* exemplified"). But the Supreme Court has never extended this criticism to *Wilder*'s subsequent analysis as to whether a statute's remedial scheme forecloses the enforcement of a plainly conferred cause of action under § 1983. In fact, the Court approvingly cited *Wilder* on this point following *Gonzaga*. *See City of Ranchos Palos Verdes v. Abrams*, 544 U.S. 113, 122 (2005).

Suffice it to say that it is difficult to imagine that Congress would have passed such an emphatic provision and yet would not have approved some private enforcement mechanism on the part of those very people whom the statute was designed to benefit. It would be an odd state of affairs if Congress had categorically precluded enforcement on the part of these very beneficiaries, and there is nothing in the statute to suggest that it did.

3.

Finally, we conclude that the Supreme Court's decision in *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773 (1980), does not undermine this analysis. South Carolina interprets *O'Bannon* to hold that the free-choice-of-provider provision does not confer any individual rights on Medicaid recipients. But that case actually resolved an entirely different question and, to the extent that it has any application here, it only supports the existence of a private right.

In *O'Bannon*, the plaintiffs were residents of a nursing home who argued that they were entitled under the Due Process Clause to a hearing before the government decertified

22

their home. *See id.* at 775–77. The state sought to do so upon the recommendation of the federal government and had cited a number of reasons for decertification, all of which had to do with professional competence. *See id.* at 775–76 & n.3. The plaintiffs did not argue that they could sue to enforce the terms of the Medicaid Act but only that the Act granted them a "property right to remain in the home of their choice absent good cause for transfer" or that such a transfer would deprive them of life or liberty. *Id.* at 784. So, as we noted previously, *see Baker*, 741 F.3d at 704, the Supreme Court had no reason to consider the existence or scope of a statutory cause of action to enforce the Medicaid Act, and none of its reasoning bears on that question. The Court simply rejected the procedural due process claim brought by the plaintiffs, concluding that the decertification of an unqualified facility "does not amount to a deprivation of any interest in life, liberty, or property." *O'Bannon*, 447 U.S. at 787.

*O'Bannon* therefore has little to do with this case. But to the extent that it is at all applicable, language from that decision only supports the plaintiff's position here. While the Court rejected the notion that plaintiffs might possess some constitutional interest to receive benefits from an unqualified provider, it repeatedly indicated that the free-choice-of-provider provision "gives recipients the right to choose among a range of *qualified* providers without government interference." *Id.* at 785; *see also id.* n.18 (noting that "the statute referred to above would prohibit any . . . interference with the patient's free choice among qualified providers"). As the Court made clear, a patient has "no enforceable expectation of continued benefits to pay for care in an institution that has been determined to be unqualified" but *does* have "a right to continued benefits to pay for care in the

23

qualified institution of his choice." *Id.* at 786. Here, of course, the issue is precisely that Planned Parenthood remains a qualified institution under the terms of the statute, and South Carolina's termination of its Medicaid provider agreement impinges on Edwards's "right to choose among a range of qualified providers without government interference." *Id.* at 785.

IV.

In sum we refuse to nullify Congress's undeniable desire to extend a choice of medical providers to the less fortunate among us, individuals who experience the same medical problems as the more fortunate in society but who lack under their own means the same freedom to choose their healthcare provider. In the Medicaid Act, Congress attempted a modest corrective to this imbalance. If we were to restrict the opportunity that these individuals have to access prenatal care that would both assist the mother and help bring healthy babies into this world, we would be reaching what we think is a legally impermissible result.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

RICHARDSON, Circuit Judge, concurring in the judgment:

Despite some reservations, I agree that the case is not moot given the facts before this Court. The State's attempt to introduce information outside the record, which allegedly comes from an internal database, cannot establish mootness.

I also continue to believe that "applying existing Supreme Court precedents requires that we find § 1396a(a)(23) to unambiguously create a right privately enforceable under § 1983 to challenge a State's determination of whether a Medicaid provider is 'qualified.'" *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 707 (4th Cir. 2019) (Richardson, J., concurring). As a result, it matters not whether our previous decision is binding circuit precedent or the "law of the case." I would reach the same result either way.

At the same time, the caselaw on implied private rights of action remains plagued by confusion and uncertainty. *Id.* at 708–10. This confusion stems from recent Supreme Court cases which cast doubt on—but fail to explicitly overrule—earlier precedent. *Gonzaga* arguably laid down a different test than *Wilder* and *Blessing*. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). And *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 330 n.* (2015), questioned *Wilder*'s reasoning and claimed later opinions "plainly repudiate" its "ready implication of a § 1983 action." Yet this Court remains bound by *Blessing* and *Wilder*. *Baker*, 941 F.3d at 709–10 (Richardson, J., concurring). So I am left hoping that clarity will soon be provided.